BALDWIN ET AL. vs. SCOGGIN, USE, &c.

The Governor has the power to remit fines under the provisions of the Constitution; although the Legislature has failed to regulate the exercise of such power.

And he may remit a fine, although the act of the Legislature declare that the fine, when collected, be paid into the county treasury, for the use of common schools.

A sheriff has no power or discretion to receive a note or property, in payment or satisfaction of a fine adjudged against a defendant in a criminal prosecution; nor has the county treasurer and *ex officio* treasurer of the common school fund, to whom

such fine is directed to be paid, any such power or discretion; a note so given and received in such case,. being no payment or satisfaction, the fine had not passed beyond the pardoning power of the Governor.

*Appeal from the Circuit Court of Ouachita County.*

The Hon. SHELTON WATSON, Circuit Judge.

STITH, for the appellant. General construction and effect of pardons. 5 *Eng.* 284; 7 *id.* 122; 7 *Peters* 130; 3 *vol. U. S. Dig., p.* 78, *sec.* 14, and case there cited.

The judgment or conviction which was pardoned by the Governor, was in favor of the State of Arkansas. Can a promissory note satisfy or destroy a judgment?

CURRAN & GALLAGHER, for the appellee. By the constitution, the Governor has the power to remit fines, *under such rules and regulations as shall be prescribed by law*; and the law having prescribed no rules and regulations, and the Governor having no such power by "virtue of his office alone," could not remit the fine in this case.

That a note in ordinary cases, is' a payment when so received, is *res adjudicata. See Real Estate Bank vs. Rawdon et al.*, 5 *Ark.* 559.

But, in this case, the note was a valid and proper mode of payment, because, by law, the fine was directed to be paid into the county treasury, for the use of common schools; and the county treasurer and *ex officio* treasurer of the school fund, was, by law, directed to loan the same at 10 per cent. interest, and, before the pardon by the Governor, the fine in this case was paid by the defendant, and loaned to him according to law, and so intended by the parties, without the formality of the defendant handing the money to the county treasurer, and he handing it back.

MR. Chief Justice ENGLISH delivered the opinion of the court. Josiah A. Scoggin, suing for the use of John H. Holcomb, his

successor in office, as county treasurer, and *ex officio* treasurer of the school fund of Ouachita county, brought an action of assumpsit in the Ouachita Circuit Court, against George W. Baldwin, Robert E. Armstrong, and John G. Banks, upon a promissory note.

The declaration alleged that, on the 8th day of October, A. D. 1852, the defendants made their promissory note, of that date, and thereby promised to pay, twelve months thereafter, to Scoggin, as county treasurer, and *ex officio* treasurer of the school fund of Ouachita county, the sum of $210, with interest at the rate of ten per cent. per annum, payable half-yearly in advance, and delivered said note to said Scoggin, &c.

The defendants pleaded non assumpsit, and a special plea, alleging, in substance, as follows:

That the defendant, *George W. Baldwin*, together with one James Baldwin, were indicted, at the spring term of the Ouachita Circuit Court, 1852, for an assault, with intent to murder one William H. Wood; and, at the succeeding term of said court, were both tried and convicted of an aggravated assault, and fined in the sum of $321 each, and five minutes imprisonment, and ordered into the custody of the sheriff, until said fine and costs were paid. That said fine, in each case, was subsequently, during the same term, reduced by the court, to the sum of $200, and final judgment rendered in favor of the State of Arkansas therefor; as would more fully appear by the record, &c. That, being in the custody of said sheriff, for the payment of said fine and costs, the said defendant, *George W. Baldwin*, gave the promissory note sued on, which he executed, with the other defendants as his securities, for said fine, and ten dollars as advance interest thereon for six months, at the rate of ten per cent. per annum, and for no other purpose, and upon no other consideration whatever; and no money, or other valuable thing was passed between the parties.

That, after the execution of the said promissory note, and the delivery thereof to the sheriff of said county, to wit: on the 22d

430      CASES IN THE SUPREME COURT

Baldwin et al. vs. Scoggin, use, &c.      [JANUARY

day of October, 1852, his excellency, JOHN SELDEN ROANE, then Governor of the State of Arkansas, granted to the said defendant, George W. Baldwin, and the said James Baldwin, a *pardon*, in the words and figures following:

THE STATE OF ARKANSAS, TO ALL TO WHOM THESE PRESENTS SHALL COME — GREETING:

*Whereas;* At the *said* term of the Circuit Court of the county of Ouachita, George W. Baldwin and James Baldwin, were convicted of an aggravated assault, and sentenced to pay a fine of two hundred dollars each: and, *whereas*, many of the good citizens of said county have petitioned for the remission of said fine, not only on the ground of its enormity, but the injustice of the verdict: Now, therefore, I, JOHN SELDEN ROANE, Governor of the State of Arkansas, in consideration of the premises, and by virtue of the authority in me vested by the constitution of said State, do hereby remit said fine, and freely and fully acquit the said George W. Baldwin, and James Baldwin, severally, from the payment of all the pains and penalties thereof. The sheriff of said county, and all others, are hereby commanded to desist from all proceedings in the collection and enforcement of said fine.

IN TESTIMONY WHEREOF, I have hereunto set my hand, and caused the seal of the State to be affixed, at [L. S.]    Little Rock, on the 22d day of October, A. D. 1852.

By the Governor.            JOHN S. ROANE.

DAVID B. GREER,
     *Secretary of State.*

Which said pardon, or letters patent, accepted by said Baldwin, [*the plea further alleges,*] are under the great seal of the State, and shown to the court, &c.

The plea was verified by affidavit.

To this special plea, the plaintiff demurred, on the grounds:

1st. That the Governor had no authority, by the Constitution and laws of the State, to remit said fine. 2d. That the fine had been paid by Baldwin, before the granting of the pardon or remission of it by the Governor.

The court sustained the demurrer to the plea, the defendants rested, and suffered final judgment for the amount of the note sued on; and appealed to this court.

It is argued by the counsel for the appellee, that the Governor has no power to remit fines, because no regulation for their remission, by him, has been made by the statute.

On the organization of most governments, it has been deemed wise and humane to lodge a pardoning power somewhere, in order that the innocent may be relieved from punishment, where it is made manifest, after conviction, that they were unjustly condemned; and in order that, in proper cases, that mercy and clemency might be extended to the offender, which cannot be granted to him by the administrators of the law, under its stern sanctions.

In the country from which we have derived our language, our laws, and, to a limited extent, our forms of government, the pardoning power is vested in the king. It was exercised by him, from a remote period, and it was declared, in Parliament, by statute 27 *Hen. VIII, c.* 24, that no other person hath power to pardon or remit any treason, or felonies whatsoever; but that the king hath the whole and sole power thereof, united and knit to the imperial crown of the realm. 4 *Black. Com.* 397. There were limitations upon this power, however, in England. *Ib.* 398.

By the constitution of the United States, *Article* 11, *sec.* 2, it is declared that the President "shall have power to grant reprieves and pardons for offences against the United States, except in cases of impeachment.

STORY, in his *Commentaries* on the *Constitution, vol.* 2, *sec.* 1504, treating of this clause, after noticing the express exception of cases of impeachment from the pardoning power of the President, and

the implied exception of contempts, says: "Subject to these exceptions, (and perhaps there may be others of a like nature standing on special grounds,) the power of pardon is general and unqualified, reaching from the highest to the lowest offences. The power of remission · of fines, penalties, and forfeitures, is also included in it; and may, in the last resort, be exercised by the executive; although it is, in many cases, by our laws, confided to the treasury department. *No law can abridge the constitutional powers of the Executive department, or interrupt its rights to interfere by pardon in such cases.*"

Thus it seems that this great prerogative of pardoning offences against the Federal Government, has been intrusted to the President, without reserving to Congress the power to abridge or restrict its exercise.

The framers of our State Constitution,, have entrusted the pardoning power to the Governor, but thought proper to reserve to the Legislature the right to regulate its exercise. The clause on the subject, is as follows: " In all criminal and penal cases, except in those of treason and impeachment, he (the Governor) shall have power to grant pardons, after conviction, and remit fines and forfeitures, under such rules and regulations as shall be prescribed by law. " *Const. Ark., art. V, sec.* 20

The Legislature have thought proper, under the power thus given them to regulate the exercise of the pardoning power, to pass an act as follows: "In all cases, in which the Governor is authorized, by the Constitution of the State, to grant pardons for any offences punishable with death, or imprisonment for six months and over, or with corporal punishment, he may grant the same *with such conditions, and under such restrictions, as he may think proper;* and he shall have power to commute the punishment of persons under the sentence of imprisonment of six months and over, or corporal punishment, by substituting banishment in lieu of the sentence of the court." *Sec.* 244, *chap.* 52, *Digest, p.* 424. The succeeding seven sections, regulate the terms of banishment.

The section above copied, does not touch the remission of fines and forfeitures by the Governor, nor is there any statute regulating their remission; hence, it is argued that he has no power to remit them.

But the above section does not, in truth, regulate the exercise of the pardoning power in cases punishable with death, or imprisonment for six months or over, or with corporal punishment, but leaves the Governor to the exercise of his own discretion in granting pardons in such cases. That section, and those following, merely regulate commutations, and not pardons.

Yet, the Governor pardoned *Edwards*, and released him from imprisonment in the penitentiary, on a conviction of manslaughter, absolutely, and without terms; and the power does not appear to have been questioned. See *Edwards vs. The State*, 7 *Eng. R.* 122; also *Amour Hunt Ex parte*, 5 *Eng. R.* 284.

. If the Legislature had passed no act on the subject of pardons at all, the Governor would thereby hardly be cut off from the exercise of this necessary and humane prerogative, conferred upon him by the Constitution. The Legislature have the right to regulate the exercise of the power; to throw checks and guards around it, perhaps, to prevent its abuse; but they surely have no right to deprive the Governor of the pardoning power, by neglecting to regulate it, or by passing laws to prohibit it.

The failure of the Legislature to regulate the exercise of the power, would be rather an indication of confidence in the sound discretion of the executive, than of a disposition to deny to him the right of exercising this humane prerogative.

We are of opinion, therefore, that the Governor has the power to remit fines under the provision of the Constitution above copied; and, until this power is regulated by law, may exercise it according to his own sound discretion.

The Governor having the power, under the Constitution, to remit the fine in this case, the act, declaring that such fines, when collected, shall be paid into the county treasury, of the proper county, for the use of schools in said county, (*sec.* 46, *chap.* 145,

55BB

*Digest*,) does not deprive the Governor of the power to remit them, as held in *State vs. Simpson*, 1 *Bailey* 378, and *State vs. Williams*, 1 *Nott & McCord* 26.

But, it is argued, by the counsel of the appellee, that the execution of the note sued on, for the amount of the fine, prior to the remission of it by Governor, and the delivery of the note to the treasurer of the county and *ex officio* treasurer of the school fund, was equivalent to a payment of the money into the treasury, and a return of it to Baldwin, as a loan, upon security, and that thereby the treasurer of the school fund acquired a vested right to the fine, which could not be divested by the pardoning power of the Governor.

· The plea alleges that Baldwin was convicted, fined $200, and ordered into the custody of the sheriff, until the fine and costs were paid. That, in order to relieve himself from such custody, he made and delivered to the sheriff, the note in question, for the amount of the fine, including advance interest at ten per cent. for six months, and that, shortly after the execution of the note to the sheriff, the Governor remitted the fine. It does not appear, from the allegations in the plea, that the plaintiff, as county treasurer and *ex officio* treasurer of the school fund, accepted the note from the sheriff, in lieu of the money, but, in order to put this case in the strongest view for the plaintiff, let it be presumed, from the facts, that the note was made payable to him, and that he afterwards sued upon it, that he did accept it of the sheriff in lieu of money—was the execution of such note a payment of the judgment of the court for the fine?

It is well settled that the sheriff had no discretion or power to receive any thing but money, in satisfaction of the judgment. *Randolph vs. Ringgold et al.*, 5 *Eng. R.* 279, and cases there cited.

Had the judgment been in favor of, or the money going to, a private individual, he might have accepted, in satisfaction of it, a note, property, or any thing else, that would have answered

his purposes, and the sheriff, under his instructions, might have received such satisfaction.

But the judgment in this case, was not in favor of, or going to, an individual. It was in favor of the State, and the law declares that, when the *money is collected*, it shall be paid into the treasury of the proper county, for the use of schools in said county, ( *sec. 46, chap. 145, Digest,* ) and other acts provide for its employment in purposes of education by the proper officers. See *Acts of* 1852, *p.* 149, *sec.* 19, *&c.*

The sheriff had no right to receive any thing but money, in satisfaction of the judgment, and the treasurer of Ouachita county, acting not in his private right, but as an officer, for the benefit of the public, had no authority, by law, to receive of the sheriff, a note in lieu of money — no matter whether he acted in the matter, as treasurer of the county, or treasurer of the school fund. The law provides for, nor recognizes any such transactions. See *Rout vs. Feemster,* 7 *J. J. Marsh.* 131.

If this court were to decide that, by agreement between the sheriffs and county treasurers, notes might be taken in payment of fines, doubtless it would soon become a general practice for offenders, after conviction, to relieve themselves from custody, by executing such notes; and appeals to the sympathies of the officers might too often induce them to take insufficient security, to the detriment of the school fund and the public interest. However good the note may have been, in this instance, and with whatever good faith the officer may have acted in taking it, we know of no law to sanction it, and cannot indulge in liberal constructions to uphold a precedent which might be followed by bad consequences.

Holding the note not to have been a payment and satisfaction of the judgment, the fine, for which it was executed, had not passed beyond the pardoning power of the Governor; and the demurrer to the special plea of defendants should have been overruled. *Rout vs. Feemster, ubi. sup.*

Had the fine actually been paid to the sheriff, in money, and

the money paid over to the county treasurer, for the use of public schools, before the remission of it by the Governor, and had Baldwin brought an action to recover back the money, after the pardon, it might have become necessary, in such case, to decide whether the treasurer of the school fund, or the inhabitants of Ouachita county, had acquired any such vested right to the money before the pardon, as could not have been divested by it, but the view that we have taken of this case, renders it unnecessary, and perhaps, improper, to decide this question.

The judgment is reversed, and the cause remanded, with instructions to the court below to overrule the demurrer to the special plea, and that the plaintiff have leave to respond over, &c.