# CHARLESTON.

STATE *ex rel.* STAFFORD *v.* HAWK, WARDEN.

Submitted January 27, 1900—Decided January 27, 1900.

1. GOVERNOR—*Reprieve—Discretion.*

The power to reprieve in all cases of felony is vested in the governor of this State, by the constitution thereof, where the necessity therefor exists. He is the sole judge of such necessity, and his conclusions are not reviewable by the courts, but are binding on the other departments of the government. (p. 435).

2. CONVICT—*Execution—Time.*

A person convicted of a felony in a circuit court is entitled to have the execution of judgment suspended until a reasonable time after the next regular term of the Supreme Court of Appeals, that he may make application thereto for a writ of error. (p 435).

*Mandamus* by the State, on the relation of J. L. Stafford, against S. A. Hawk, warden of the penitentiary.

*Denied.*

VINSON & THOMPSON and JOHN MARCUM, for relator.

EDGAR P. RUCKER, ATTY. GEN. and E. W. WILSON, for respondent.

DENT, JUDGE:

To a writ of *mandamus nisi* requiring the warden of the penitentiary to receive and confine therein Elias Hatfield, Jr., convicted in the circuit court of Mingo County for murder, and sentenced to imprisonment for twelve years, the return is made that the governor had granted a reprieve for thirty days to permit the prisoner to apply to this Court for a writ of error. To this return the relator demurs as insufficient, on the sole ground that the governor has no power to reprieve except in capital offenses. Section 10, Article VII., of the Constitution provides: "The governor shall have power to remit fines and penalties in such cases

and under such regulations as may be prescribed by law; to commute capital punishment, and, except where the prosecution has been carried on by the house of delegates, to grant reprieves and pardons after conviction." The power to pardon necessarily includes the power to reprieve or suspend the sentence until the matter can be inquired into and determined. At common law the power to reprieve was lodged in the courts, as the representatives of the king, he being considered the very fountain of justice; and he was never called upon to exercise it except in capital cases of necessity. All offenses were deemed offenses against the king. "It is reasonable that he only who is injured should have the power of forgiving." 1 Cooley, Bl. (3d Ed.) 268. Because the king was never personally called upon to exercise the power of reprieve, owing to the authority delegated by him to his courts, except in capital cases, has grown up the theory that he had no such power. Almost all offenses in England in its early history were capital, the number being not less than one hundred and sixty. The king was kept so busy in capital cases that minor offenses or misdemeanors were intrusted to his courts, justices, and magistrates. That he had the power to reprieve or suspend sentence in any case of necessity, there cannot be the least doubt. The governor of this State is clothed with the king's prerogative in this respect, except wherein it is plainly limited by the Constitution. Hence he has the power to reprieve in all cases of felony where necessity requires his intervention. Of this necessity he is the sole and final judge, and his conclusions are not reviewable by the courts. In such cases as the present, while the power exists, the necessity of its exercise should be avoided by the trial court, as provided by law, postponing "the execution of its sentence until a reasonable time beyond the first day of the next term of the Supreme Court of Appeals." Section 2, chapter 160, Code. This necessarily means a regular term fixed by statute. The time granted should be sufficient for the proper preparation of the record and presentation of his petition to the Supreme Court. The time in this case, without regard to the terms of the Supreme Court, was fixed at sixty days, —ordinarily a sufficient time; but, owing to some unusual

delay on the part of the stenographer, which remains without reasonable explanation, the time, by no fault of the prisoner, proved insufficient. The prisoner was therefore justly entitled to an extension of the time. The trial court might have granted it, thus correcting its error, not judicial in its character, on motion of the prisoner, and of which no one could have complained. Even if it were judicial error, the prisoner would be bound by it, as committed at his instance, for his benefit. *Fults* v. *State*, 2 Sneed, 232. If the circuit court refused to make the correction on proper application, this Court would have either compelled it to do so, or corrected its error. This would have taken way the necessity for executive interference, provided it could have been accomplished without delay. Doubts of power, procrastination of various kinds, and even unavoidable delays, in a case of this character, rendered the interference of the executive a necessity, as being more effective and prompt than an application to the courts. This, however, should be a warning to the circuit court to grant to persons convicted of felony the reasonable time provided by statute, and compel its officers to discharge their duties so as to facilitate, instead of delaying, their applications for writs of error to this Court. Neither a court nor any of its officers should be permitted to indirectly deprive a prisoner of his statutory rights. If innocent, he should not be subjected to punishment unjustly; and, if guilty, his punishment should be in accordance with law.

*Denied.*