## WILLIAMS *v.* BRENTS.

## Opinion delivered June 7, 1926.

1. PARDON—COMMUTATION OF SENTENCE DEFINED.—A commutation of sentence is a change of punishment into one less severe.

2. PARDON—REPRIEVE DEFINED.—The legal meaning of "reprieve" is to suspend the execution of sentence for a definite term.

3. PARDON—EFFECT OF "INDEFINITE FURLOUGH."—An instrument signed by the Governor granting an "indefinite furlough" to defendant convicted of a felony, subject to revocation for satisfactory cause or violation of the conditions therein, is a commutation of sentence conditionally releasing defendant's punishment without removing his guilt.

4. PARDON—CONSTRUCTION OF COMMUTATION.—Commutations, like pardons, must be construed most strictly against the State and most beneficially for the convicted person.

5. PARDON—CONDITIONAL COMMUTATIONS.—Commutations, as well as pardons, may be granted upon conditions.

6. PARDON—CONSTRUCTION OF COMMUTATION.—An instrument signed by the Governor granting an indefinite furlough to a felon, subject to revocation for cause, is to be construed as a whole to carry out the Governor's intention.

7. PARDON—CONSTRUCTION OF COMMUTATION.—An instrument commuting a sentence of three years' imprisonment for voluntary manslaughter, on condition that he violate no law, carry no weapons nor gamble, and that he will report monthly to the warden until the expiration of his sentence, *held* to contemplate that the conditions were to be complied with only during the period of the sentence.

8. PARDON—LANGUAGE USED.—Technical words or terms are not necessary to constitute a pardon or commutation of a sentence.

9. PARDON—CONDITIONAL COMMUTATION—REARREST.—One sentenced to three years' imprisonment whose sentence was commuted upon certain conditions, who has complied therewith during the period of his sentence, cannot be rearrested after his term of imprisonment has expired.

Certiorari to Conway Circuit Court; *J. T. Bullock,* Judge; affirmed.

### STATEMENT BY THE COURT.

The Attorney General, on the relation of J. L. Williams as sheriff of Conway County, Arkansas, filed a petition in this court for a writ of certiorari to quash a

judgment of the county court granting a writ of habeas corpus to John Brents and dismissing him from custody on a judgment in a felony case.

According to the allegations of the petition, at the October term, 1922, of the Conway Circuit Court, John Brents was convicted of the crime of voluntary manslaughter and sentenced to three years in the State Penitentiary, and, by due process of law, was committed as a prisoner to the State Penitentiary to serve said sentence.

On the 19th day of April, 1923, the Hon. Thomas C. McRae, as Governor of the State of Arkansas, issued to said John Brents what is termed a "furlough," which by its own terms expired January 3, 1924. On the last-named date, Governor McRae issued a second furlough to the said John Brents, which, by its own terms, would have terminated on the 2d day of January, 1925. On the 29th day of October, 1924, Governor McRae delivered to John Brents an instrument, which reads as follows:

"To the commissioners, superintendent, and wardens of the State Penitentiary:

"An indefinite furlough is hereby granted to John Brents, who was convicted at the October, 1922, term of of the Conway County Circuit Court for the crime of voluntary manslaughter, and sentenced to three years in the penitentiary, which furlough is issued upon the following conditions, agreed to and accepted by said prisoner:

"That he will not engage in the sale, manufacture or transportation of intoxicating liquors of any kind, and that he will cooperate with the officials and law-abiding citizens of the community in the prosecution of those who have or may hereafter do so. He shall refrain from the use of intoxicating liquors as a beverage, and the use of deleterious drugs or dope. He shall not carry any weapons, shall not gamble, nor be in possession of any gambling device. He shall not violate any of the criminal laws of any State, nor of the United States, nor the ordinance of any town or city. He shall, on the first day of each month, until the expiration of his sentence, notify the warden of the penitentiary, Little Rock, where he is

and what he is doing. He shall reside with and support his family. This furlough is subject to be summarily revoked for the violation of any of said conditions, or for any other satisfactory cause, and the time granted in this furlough is not to be counted in computing said prisoner's term of confinement. In testimony whereof, I have hereunto subscribed my name as Governor, at Little Rock, this the 29th day of October, 1924.

"THOMAS C. McRAE, Governor."

On the 19th day of February, 1926, Governor Terral issued the following warrant:

"To any sheriff, the commissioners and wardens of the State Penitentiary:

"The indefinite furlough which was granted to John Brents, who was convicted at the October term, 1922, of the Conway County Circuit Court, for the crime of voluntary manslaughter and sentenced to three years in the penitentiary, is hereby revoked, for cause satisfactory to me, and it is hereby ordered that he be immediately returned to the penitentiary walls, Little Rock, Arkansas, to complete his sentence.

"Done at my office in Little Rock, Arkansas, this the 19th day of February, 1926. Tom J. Terral, Governor."

J. L. Williams, as sheriff of Conway County, executed said warrant by arresting said John Brents.

On the 26th day of February, 1926, John Brents filed a petition in the Conway Circuit Court for a writ of habeas corpus. In his petition it is alleged that he was convicted of the crime of voluntary manslaughter for killing Leonard Hare, and his punishment fixed at three years in the State Penitentiary, at the October term, 1922, of the Conway Circuit Court. It is further alleged that judgment and sentence was rendered accordingly, and that he, John Brents, in keeping therewith, surrendered himself into custody and in execution of said sentence, and that he was by due process of law committed as a prisoner to the State Penitentiary to serve said sentence. It is also alleged that on the 19th day of April, 1923, while the petitioner was confined as a prisoner in the exe-

cution of the judgment and sentence of the court, the Hon. Thomas C. McRae, as Governor of the State, granted him a commutation under an instrument commonly referred to as a furlough, and that he was permitted to be in part at liberty until the termination of the period of time mentioned therein, which was on the 5th day of January, 1924. It is also alleged that on the 3rd day of January, 1924, the said Governor renewed the extension of clemency until January 2, 1925, by a written instrument similar in form. It is also alleged that on the 29th day of October, 1924, the renewal of said commutation was granted by said Governor for an indefinite length of time, subject to the said conditions therein set out. A copy of this instrument is attached as a part of the petition and made an exhibit to it. The petitioner further alleged that he complied with all the conditions in the commutation, and that, after the expiration of the full term of his sentence, to-wit, on February 19, 1926, the Hon. T. J. Terral, then Governor of the State of Arkansas, delivered a warrant to J. L. Williams, the sheriff of Conway County, and directed that he be immediately taken into custody and returned to the penitentiary walls at Little Rock to complete his sentence. By virtue of said warrant the petitioner was taken into custody and illegally deprived of his liberty.

A demurrer was filed to the petition of John Brents for a writ of habeas corpus, which was overruled by the circuit court.

The defendant, J. L. Williams, as sheriff of Conway County, refused to plead further, and elected to stand upon the demurrer. It was by the circuit court ordered and adjudged that the plaintiff, John Brents, be discharged from custody and granted his freedom. This judgment was rendered by the circuit court of Conway County on March 8, 1926, a day of its March term.

The petition for a writ of certiorari was duly filed in this court on April 5, 1926.

*H. W. Applegate,* Attorney General, and *Walter J. Terry,* for appellant.

*Strait & Strait,* for appellee.

HART, J., (after stating the facts). Our Constitution provides that in all criminal cases, except in those of treason and impeachment, the Governor shall have power to grant reprieves, commutations of sentence, and pardons after conviction. Constitution of 1874, art. 6, § 18.

In *Ex parte Garland,* 4 Wall. 333, Mr. Justice Field, who delivered the opinion of the court, said: "A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and, when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of law the offender is as innocent as if he had never committed the offense."

Such is the effect of our own decisions. This court has also held that, where the Governor is authorized to grant pardons, he may do so under such conditions or restrictions as he may think proper. *Ex parte Hunt,* 10 Ark. 284; *Baldwin* v. *Scoggin,* 15 Ark. 427; *Ex parte Hawkins,* 61 Ark. 321; and *Ex parte Brady,* 70 Ark. 376.

A commutation of sentence is a change of punishment into one less severe, substituting a less for a greater punishment by authority of law. *Mullen* v. *United States,* 212 U. S. 516. This is the generally accepted legal definition of commutation of sentence. 29 Cyc. 1561, and cases cited.

The legal meaning of reprieve is to suspend the execution of sentence for a definite time. 34 Cyc., p. 1621, and 20 R. C. L., p. 528.

In the application of these definitions to the instrument under consideration, we all agree that it is not a pardon, conditional or absolute, nor a reprieve. The court, however, is of the opinion that the instrument is a commutation of sentence, and was therefore, under our Constitution, an instrument which the Governor had the power to grant. In this connection it may be said that the statute construed in *Horton* v. *Gillespie,* 170 Ark. 107, applies only to pardons.

It is insisted that the instrument it not a commutation of sentence because, in the beginning of it, it is termed "an indefinite furlough." It is true that the word "furlough" is a military term, and means leave given to a soldier to be absent from service for a certain time, but the name should not control where it is at variance with the substance of the instrument. The rule is that a pardon must be construed most strictly against the State and most beneficially for the convicted person. *Ex parte Hunt,* 10 Ark. 284; and *Redd* v. *State,* 65 Ark. 475.

There seems to be no good reason why this rule of construction should not be applied to commutations of sentence as well as to pardons.

Again, this court has held that the Governor may grant conditional pardons, and for the same reason we think that he may grant conditional commutations of sentence. If commutation of sentence means to change from a higher to a lower or less severe punishment, the instrument in question should be construed as a whole, and that meaning given to it which it was intended by the Governor to have.

As we have already seen, to commute means to change, and, as the Constitution vests this power in the executive as well as the power to grant pardons, the same rule of construction should be applied to both, and the instrument should be read and construed as a whole in order to carry into effect the intention of the Governor.

A judgment of conviction and sentence is the basis upon which the commutation is grounded. The prisoner was sentenced to three years' imprisonment in the penitentiary. The Governor first granted him a commutation which, by its own terms, ended on January 3, 1924, which was before his sentence of three years had expired. Again a commutation was granted to the prisoner, which would have terminated on the second day of January, 1925, which was also before his sentence had expired.

On the 29th day of October, 1924, Governor McRae delivered to Brents the instrument under consideration

in this case. It is true it is termed "an indefinite furlough," but it is coupled with such conditions and restrictions as show that they were only to be complied with during the period of the sentence. When the instrument is considered from its four corners, the terms of the commutation do not indicate that it was contemplated that the conditions should operate beyond the term of the sentence from which the defendant was released.

In the absence of language showing such intention, there seems no good reason for holding that the conditions of the commutation were to be extended beyond the period of his sentence. He was required to refrain from the use of intoxicating liquors as a beverage and the use of deleterious drugs. He was required not to carry a weapon, and not to gamble or be in possession of any gambling device. He was also required, on the first day of each month until the expiration of his sentence, to notify the warden of the penitentiary where he was and what he was doing. This indicates that, if he complied with the conditions of the commutation until the expiration of the period of his sentence, he was to be released and discharged from further punishment.

The provision "that the time granted in this furlough is not to be counted in computing said prisoner's term of confinement," when read in connection with the words preceding it, shows that it was intended that, if Brents should violate any of the conditions of his commutation of sentence and should be rearrested for violating such conditions, the time he had been at liberty under the commutation should not be counted as a part of the term of his sentence. But, if he should not be rearrested during the period of his sentence for a violation of any of the conditions of his commutation, he was entitled to be free at the end of the term of his sentence.

One of the main objects in granting the commutation was to look to the reformation of the defendant, and the special control of the conduct of the defendant ceased when his term expired, and there seems to be no controlling language in the commutation showing an intention on

the part of the Governor to extend the conditions and restrictions beyond the expiration of the sentence, and, under the beneficent rule above announced, all doubts should be construed in favor of the defendant's liberty. This is especially true when we consider that, under our Constitution, the Governor had the power to grant Brents a commutation of sentence, and had none to grant him a "furlough."

It is well settled that no technical words or terms are necessary to constitute a pardon or a commutation of sentence. The instrument in question had the effect of remitting or releasing conditionally the punishment of Brents, without removing his guilt. It is only a full pardon of the offense which can wipe away the infamy of the conviction and restore the convict to his civil rights. *Perkins* v. *Stevens,* 24 Pick. (Mass.) 277, and *Ex parte Garland,* 4 Wall. (U. S.) 333.

It would take a pardon to restore his citizenship, but, having complied with the terms of the commutation of sentence during the period of his sentence, and this being the period of time provided for in the commutation, in the opinion of the court, the Governor had no right to have Brents rearrested after his term of imprisonment had expired, and the circuit court properly released him from custody.

It follows that the petition for a writ of certiorari to quash the judgment of the circuit court will be denied, and the judgment will be affirmed.