SCAIFE *v.* STATE.

4425                                                    196 S. W. 2d 902

Opinion delivered October 21, 1946.

A. M. Coates, for appellant.

*Guy E. Williams,* Attorney General and *Earl N. Williams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. December 17, 1943, appellant stabbed his wife and her mother—(Mrs. Susie Davis). Each died within a short time; Mrs. Davis in less than an hour, and Mrs. Scaife while being taken to a hospital at Helena. A jury, by some process of reasoning not required to be expressed, appears to have found that there were mitigating circumstances and that lethal use of a hunting knife amounted to murder in the second degree in respect of the charge that the defendant had " . . . unlawfully, wilfully, feloniously, and with malice aforethought, and after deliberation and premeditation" murdered his wife, Jennie Ruth. A prison sentence of ten years was imposed. Appeal resulted in affirmance of the judgment October 2, 1944. See *Scaife v. State,* 207 Ark. 664, 182 S. W. 2d 679. Rehearing was denied October 30. This court's mandate issued November 3.

December 27, 1944, the Governor issued his proclamation in which it was said, " [I] do hereby grant a stay of sentence" until the Phillips Circuit Court convened in April, 1945, " . . . and such disposition be made of the case [charging that Scaife murdered Mrs. Davis] as the court officials may deem advisable."

The next record entry is a motion by the Prosecuting Attorney dated May 8, 1945. It recites that "a continuance has been had in the case now pending." Prayer was that a commitment be issued, in compliance with the 1944 judgment. In response it was insisted that because four terms of Court had intervened (Pope's Digest, §§ 3968, 3969) and the information charging Scaife with murdering Mrs. Davis had not been tried, he was entitled to discharge—not only as to the offense undisposed of, but likewise the Court was powerless, for want of jurisdiction, to direct issuance of a commitment based upon the 1944 judgment of imprisonment.

While it is stated in appellant's response to the petition for commitment that the State, on its own motion, dismissed the second charge of murder, the record does not contain an order to this effect.

*Davis* v. *State*, 169 Ark. 932, 277 S. W.. 5, holds that a court has the inherent power to enforce its own orders, once a legal judgment or decree has been rendered. On the other hand, there is the comment that such necessary authority does not confer upon courts the implied discretion to permanently refuse to compel compliance with valid orders. Again it was said that courts have no inherent power to mitigate or avert appropriate penalties by refusing to inflict them in individual case.[1]

Section 18, Art. VI, of the Constitution, authorizes the Governor, in all criminal and penal cases other than treason and impeachment, to grant reprieves, commutations of sentence and pardons after conviction. He may also remit fines and forfeitures under such rules and regulations as may be prescribed by law. A "furlough," so called, has been construed to be a commutation. *Williams* v. *Brents*, 171 Ark. 367, 284 S. W. 56.

The constitutional provision investing the Chief Executive with power in the matters enumerated contains the further authority that he may grant reprieves and pardons in case of treason . . . by and with the advice and consent of the Senate; but if the Senate is in recess, he may "respite the sentence until the

---

[1] In *Millsaps* v. *Strauss*, 208 Ark. 265, 185 S. W. 2d 933, Act 76, p. 40, approved February 9, 1923, Pope's Digest, Sec. 4053, is mentioned. When the Millsaps-Strauss opinion was written March 5, 1945, measures passed by the General Assembly had not been assigned numbers as Acts. In a footnote it was sought to call attention to enactments affecting criminal procedure, suspended sentences, etc., and a notation was, "Senate Bill No. 169 of the Fifty-fifth (1945) General Assembly." Senate Bill 169 became Act 298: an appropriation for the Pine Bluff Negro Normal School. The Reporter, in checking for the Act number, did not notice the error previously made, hence the reference is not only wrong, but is misleading. For more accurate information, see Act 262 of 1945, approved March 20, p. 602; also, Act 158, approved March 2, 1945, and Act 302 of 1945. The latter relates to parole matters and is found at page 690.

adjournment of the next regular session of the General Assembly. [2]

It will be observed that the term "respite of sentence" is used in regard to the Governor's right to act where a conviction had been had for treason, and the Senate is in recess. Nowhere is there a suggestion that the executive may "stay a sentence." He may relieve against execution of the sentence, but cannot prevent its issuance as a part of the judicial process; and the court's judgment stands, irrespective of a ministerial officer's power to enforce it after the Governor has acted. [3] Clemency, under our Constitution, comes *after,* not before conviction and judgment. *Hutton* v. *Mc-Cleskey,* 132 Ark. 391, 200 S. W. 1032.

We must, however, assume what was probably true: that "stay of sentence" was intended for "stay of execution." The purpose was to place the convicted man on a basis of temporary freedom. Since technical terms are not necessary to a pardon, commutation, or reprieve, the Governor's proclamation served its purpose and the language employed is not an issue here. See *Williams* v. *Brents,* 171 Ark. 367, 284 S. W. 56.

When this Court's mandate was sent to the Clerk at Helena, the judicial transaction had been completed, although the trial judge had a continuing right to enforce appropriate orders. When the respite given under the Governor's proclamation expired, (as it concededly did before Circuit Court directed that a commitment be issued) it became the duty of that tribunal to do whatever was incidentally necessary to give effect to the judgment. Jurisdiction was reacquired following affirmance on appeal.

While the Supreme Court has power, in certain circumstances, to make orders in furtherance of its

---

[2] Another requirement is that "[The Governor] shall communicate to the General Assembly at every regular session each case of reprieve, commutation or pardon, with his reasons therefor, stating the name and crime of the convict, the sentence, its date and the date of the commutation, pardon, or reprieve."

[3] This statement has no reference to the effect of a pardon in restoring citizenship or "wiping away the infamy."

supervisory authority,[4] and consonant with statutory provisions,[5] customary procedure is for a mandate to be sent the Circuit Clerk; whereupon all authority pertaining to the cause touching the affirmed judgment attaches, and the Clerk of the trial court, as a duty pertaining to the transaction in question, must (in criminal cases) execute a commitment and deliver it to the Sheriff if there is affirmance.

Facts revealed in the case at bar make it mandatory that the clerk of the Phillips Circuit Court proceed as directed here. The clerk of this court is ordered to issue his mandate at once.

Affirmed.

---

[4] Article VII, Sec. 4, Constitution of 1874.
[5] Pope's Digest, Secs. 4241-42-43, et seq.