385 S.E.2d 248

## The COUNTY COMMISSION OF MERCER COUNTY

v.

### A.V. DODRILL, Commissioner, Department of Corrections.

No. 18867.

Supreme Court of Appeals of
West Virginia.

April 19, 1989.

Dissenting Opinion of Justice Workman
April 26, 1989.

Edwin B. Wiley, Princeton, for Mercer Co. Com'n.

Dana Davis, Atty. Generals Office, Charleston, for Dodrill.

McHUGH, Justice:

In this original proceeding, the petitioner, the Mercer County Commission, seeks a writ of mandamus to be awarded against the respondent, A.V. Dodrill, then Commissioner of the Department of Corrections, to show cause why the respondent should not be compelled to take immediate custody of all prisoners lawfully sentenced to the West Virginia Penitentiary that are currently in the Mercer County Jail or held for Mercer County in the Wyoming County Jail. This Court has reviewed the petition, the response, and all arguments and exhibits attached thereto. We are of the opinion

that the petition for a writ of mandamus should be granted, as moulded herein.

During the past two years, the respondent has refused to take custody of individuals sentenced to the custody of the West Virginia Department of Corrections. The respondent's refusal was initially based upon Executive Order No. 11–86 and No. 14–86, issued by then Governor Arch A. Moore, Jr.

Executive Order No. 11–86 directed the respondent to accept no inmates at the state correctional facilities until the governor and respondent have determined that conditions at such facilities were appropriate to accommodate additional inmates. Executive Order No. 14–86 established a maximum capacity with respect to populations at state correctional facilities.

Executive Order No. 11–86 and No. 14–86, however, were held invalid by this Court in *State ex rel. Dodrill v. Scott,* 177 W.Va. 452, 352 S.E.2d 741 (1986), because they were contrary to specific statutory mandates.

Thereafter, the respondent refused to take custody of sentenced individuals because the governor granted reprieves to certain individuals convicted and sentenced to the custody of the Department of Corrections.

The petitioner claims that the respondent's refusal causes the petitioner to be in violation of a federal court order handed down in *Dawson v. Kendrick,* 527 F.Supp. 1252 (S.D.W.Va.1981), which sets forth a maximum number of prisoners that may be maintained in the Mercer County Jail.

This Court issued a rule directed against the respondent to show cause why a writ of mandamus should not be awarded against him.

The petitioner's predicament arises from its interpretation of the federal court order in *Dawson, supra,* which addressed, *inter alia,* the problem of overcrowding in the Mercer County Jail. There, the United States District Court for the Southern District of West Virginia stated:

The court concludes that under the due process analysis articulated in *Bell v.*

*Wolfish,* [441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)], the housing of more than one person in each of the 35–square foot sweat cells constitutes an imposition of undue hardship and, as such, is punishment as applied to pre-trial detainees. Moreover, this is not a condition as contemplated in *Wolfish* where double celling is a function of the defendants' interest in 'maintaining security and order and operating the institution in a manageable fashion.' 441 U.S. at 540, n. 23, 99 S.Ct. at 1875, n. 23. Rather, it is a product of the general neglect evidenced in the upkeep and maintenance of the jail and the consequent reduction in useable cell space. As applied to convicted prisoners, double celling in the 5' × 7' sweat cells constitutes a deprivation of minimally adequate shelter as judged by even the most parsimonious contemporary standards.

*Dawson,* 527 F.Supp. at 1296–97 (footnote omitted).

The petitioner avers that under the holding of *Dawson,* the maximum number of prisoners that can be held in the Mercer County Jail is fifty-five. However, the jail's population at the time this proceeding commenced had reached sixty-nine. The petitioner contends that as a direct result of this overcrowding, it has been compelled to transfer prisoners to jail facilities in Wyoming County at enormous costs.

The respondent maintains that the fundamental issue before the Court in this case concerns the nature of a "reprieve," and that the respondent has no duty to incarcerate convicts who have been granted reprieves.

Article VII, § 11 of the *West Virginia Constitution* provides:

The governor shall have power to remit fines and penalties in such cases and under such regulations as may be prescribed by law; to commute capital punishment and, except where the prosecution has been carried on by the house of delegates, *to grant reprieves* and pardons *after conviction;* but he shall communicate to the legislature at each session the particulars of every case of fine

or penalty remitted, of punishment commuted and of reprieve or pardon granted, with his reasons therefor.

(emphasis supplied) *W.Va.Code*, 5–1–16 [1931] contains the same provision.

The governor's power to grant reprieves was noted by this Court as early as the turn of this century. In *State ex rel. Stafford v. Hawk*, 47 W.Va. 434, 34 S.E. 918 (1900), Judge Marmaduke Dent, writing for the unanimous Court, stated:

> The governor of this State is clothed with the king's prerogative [to grant reprieves] in this respect, except wherein it is plainly limited by the Constitution. Hence he has the power to reprieve in all cases of felony where necessity requires his intervention. Of this necessity he is the sole and final judge, and his conclusions are not reviewable by the courts.

*Id.* 47 W.Va. at 435, 34 S.E. at 918. In *State ex rel. Coole v. Sims*, 133 W.Va. 619, 58 S.E.2d 784 (1950), this Court referred to the governor's constitutional power to grant reprieves as "unrestricted." *Id.* 133 W.Va. at 628, 58 S.E.2d at 789.

The chief executives of other states possess the same exclusive power to grant reprieves, and the highest courts in those jurisdictions have upheld such power. *People ex rel. Dunbar v. District Court*, 180 Colo. 107, 111, 502 P.2d 420, 422 (1972); *Ex parte Hyde*, 140 Fla. 494, 498, 192 So. 159, 161 (1939); *People ex rel. Gregory v. Pate*, 31 Ill.2d 592, 595, 203 N.E.2d 425, 427 (1964); *Rogers v. Youngblood*, 226 Ind. 165, 170, 78 N.E.2d 663, 665 (1948).

■ As previously noted, in 1986, the governor issued executive orders which directed the respondent to accept no inmates at the state correctional facilities and es-

tablished maximum capacities at such facilities. These orders, however, ran afoul of specific statutory mandates contained in Chapters 61 and 62 of the *W.Va.Code*, which prescribe mandatory confinement for convictions of various criminal offenses. Consequently, this Court held that "[a] governor's executive order which directs action on the part of the West Virginia Department of Corrections that is contrary to specific statutory mandates is invalid." Syl., *State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 352 S.E.2d 741 (1986).

The petitioner correctly points out that pursuant to the holding of *Dodrill, W.Va. Code*, 62–13–5 [1977] imposes a nondiscretionary duty on the respondent to take custody of prisoners sentenced to state correctional facilities. Therefore, the petitioner contends, the respondent should be compelled in this proceeding to accept such prisoners. We disagree.

In *Dodrill*, the governor issued executive orders which ran contrary to specific *statutory* mandates. In the case now before us, however, the governor effectively circumvented the respondent's nondiscretionary duty by exercising a power set forth in a specific *constitutional* provision.[1]

■ Clearly, pursuant to *W.Va. Const,* art. VII, § 11, in a felony case, the governor is vested with the power to grant a reprieve after conviction. Syl. pt. 1, *State ex rel. Stafford v. Hawk*, 47 W.Va. 434, 34 S.E. 918 (1900). Under the facts available to us, the governor did not violate the provisions of the State *Constitution* or *W.Va.Code*, 5–1–16 [1931] which expresses this power.

---

1. The petitioner contends that the reprieves granted in this proceeding do not conform with the spirit of their meaning in the State *Constitution*. It maintains that the reprieves granted in this case have merely delayed transportation of prisoners to state correctional facilities while remaining in the custody of the petitioner.

"Reprieve" has been defined as:

Temporary relief from or postponement of execution of criminal punishment or sentence. It does no more than stay the execution of a sentence for a time, and it is ordinarily an act of clemency extended to a pris

oner to afford him an opportunity to procure some amelioration of the sentence imposed. It differs from a commutation which is a reduction of a sentence and from a pardon which is a permanent cancellation of a sentence.

*Black's Law Dictionary* 1170 (5th ed. 1979).

The issue in this case is not whether the governor's actions conformed with the traditional definition of "reprieve." In light of our holding, we need not engage in such a discussion.

The petitioner has pointed out that it has been compelled to bear the costs of maintenance for prisoners that are lawfully sentenced to the custody of the respondent.[2] Moreover, in attempting to comply with the federal court decision of *Dawson, supra,* the petitioner has resorted to transferring prisoners to the jail facilities in Wyoming County at substantial costs.

Chapter 7, article 8 of the *W.Va.Code* contains provisions for county jails. This article contemplates federal, county, and municipal prisoners held in county jails. For example, *W.Va.Code,* 7–8–2a(f) [1985] states:

(f) The county commission shall keep or cause to be kept a daily record showing the total number of prisoners confined in the jail of the county, the number of prisoners admitted, the number released and the time of each such admittance and of each such release. Such record shall show such information separately as to the prisoners *of the county, of each municipality* and *of the United States.* The county commission shall also keep or cause to be kept such other accounts and records as will enable it to show the per capita daily cost of the feeding and care of prisoners in each calendar month.

(emphasis supplied) Similarly, *W.Va.Code,* 7–8–8 [1947] provides, in pertinent part:

The jail of any county may be used for the confinement of persons committed thereto under the laws of the United States....

The United States or the creditor, as the case may be, shall be responsible to the county court [county commission] for payment of the costs for the maintenance of any person confined in a county jail as provided in this section.

There is no statute providing for maintenance of *state* prisoners held in county jails because *W.Va.Code,* 62–13–5 [1977] provides for their transfer to state penal or correctional institutions. This Court has stated when an inmate becomes a state prisoner. "[T]he real authority by which the Warden of the State Penitentiary detains the [prisoner] is the valid final judgment of the Criminal Court[.]" *State ex rel. Roberts v. Tucker,* 143 W.Va. 114, 118, 100 S.E.2d 550, 552–53 (1957). *See also State ex rel. Clevenger v. Coiner,* 155 W.Va. 853, 855, 188 S.E.2d 773, 775 (1972); *State ex rel. Koton v. Coiner,* 155 W.Va. 668, 671, 187 S.E.2d 209, 211 (1972).[3]

Although the governor's action, granting reprieves, is constitutionally sound, the adverse effect has been to place a financial burden on the taxpayers of Mercer County. We agree with the petitioner's assertion that the reprieves granted in this case have merely delayed the transportation of individuals to state correctional facilities and have relieved the state of its duty to take custody of these individuals. Notwithstanding the governor's intentions which are furthered by granting reprieves, under the circumstances of this case, the financial responsibility for individuals lawfully sentenced to the State Department of Corrections must be borne by the state and not the county.

Obviously, there is a paucity of authority on the issues raised in this proceeding. One of the primary concerns of the Court has been to balance the monetary interests of the state and the counties. We

**2.** The petitioner avers that during 1988, it has been forced to provide *state* prisoners more than 5,000 "prisoner days" of maintenance and medical expenses, exceeding $100,000.

The petitioner has also attached, as an exhibit, the draft report of the Facilities Review Panel. This report, based upon an inspection of the Mercer County Jail, states that the jail violates the federal court order handed down in *Dawson, supra,* and it states that suicide attempts by inmates have increased due to the overcrowded conditions.

**3.** Under the Judicial Reorganization Amendment, ratified November 5, 1974, circuit courts now have jurisdiction of "all crimes and misdemeanors." *W.Va. Const.* art. VIII, § 6. Prior to ratification of this amendment, criminal jurisdiction was vested in certain courts of limited jurisdiction, some of which were called "Criminal Courts," and in the absence of such courts, in circuit courts. *W.Va. Const.* art VIII, §§ 12, 19 (1872, amended 1880). Although magistrate courts also have jurisdiction of criminal matters pursuant to the amendment, such courts may not convict or sentence in felony cases. *W.Va. Const.* art. VIII, § 10.

believe we have reached a fair resolution to the parties. We also recognize that many state prisoners who have been in county jails in a reprieve status are now in one of the state correctional facilities or perhaps on parole. We will not require the state to reimburse the counties for those prisoners who have passed through the county jails. Nor will we require the state to reimburse the counties to this date for those prisoners who are now in the county jails under reprieve. Therefore, beginning with the date this opinion is filed, when the governor grants a reprieve to an individual held in a county jail, who has been convicted of a felony and has been lawfully sentenced to the custody of the State Department of Corrections, but the reprieve is granted merely to delay that individual's transfer to a state penal or correctional institution, the state will be required to pay the reasonable maintenance and medical expenses related to that individual which are incurred by the county due to that delay.[4] In our opinion, this is a reasonable remedy in this proceeding, alleviating the financial burden that has been imposed on the petitioner by a legitimate exercise of constitutional executive power.

Consistent with the foregoing, the petitioner's writ of mandamus, as moulded, is hereby granted.

Writ granted as moulded.

WORKMAN, J., reserves the right to file a dissenting and concurring opinion.

**WORKMAN, Justice, dissenting:**

I respectfully dissent in part from the opinion of the majority. While the majority is correct in its holding that the governor possesses a wide-ranging and exclusive right to grant reprieves, the real question is whether the action in issue here is truly in the nature of a reprieve.

A reprieve is defined as the "[t]emporary relief from or postponement of execution of criminal punishment or sentence. It does no more than stay the execution of a sentence for a time...." *Black's Law Dictionary* 1170 5th ed. (1979). *See also* 59 *Am.Jur.2d* Pardon and Parole §§ 4 & 22 (1987); 67A *C.J.S.* Pardon and Parole § 30 (1978).

Clearly, the governor has almost untrammelled authority to grant reprieves. But a reprieve necessarily involves a stay in the execution of a sentence. *See Williams v. Brents*, 171 Ark. 367, 284 S.W. 56 (1926); *State ex rel. Waggoner v. Cozart*, 222 La. 1039, 64 So.2d 424 (1953); *Lime v. Blagg*, 345 Mo. 1, 131 S.W.2d 583 (1939); *Clifford v. Heller*, 63 N.J.L. 105, 42 A. 155 (1899); *Sterling v. Drake*, 29 Ohio St. 457 (1876); *Ex parte Bryant*, 155 Tex.Crim. 23, 230 S.W.2d 824 (1950). In the case at hand, the issue revolves around a document which, though entitled a reprieve, not only fails to stay the execution of sentence, but specifically directs the prisoner to remain in the custody of the sheriff.

Aside from the fact that the governor's action does not stay the execution of the sentence, and thus is not in the nature of a

---

**4.** This case does not present a situation where the governor has acted pursuant to emergency powers conferred upon him by *W.Va.Code*, 15–5–6 [1973]. *Accord, State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 459, 352 S.E.2d 741, 747–48 (1986) (overcrowded condition of state's penal facilities is not a situation subject to emergency powers of governor under *Code*, 15–5–6). The issue of whether a state is liable for maintaining its prisoners in a county jail where the governor acted under emergency powers was confronted by a New Jersey appeals court in *Shapiro v. Fauver*, 193 N.J.Super. 237, 473 A.2d 112 (App. Div.), *cert. denied sub nom. Shapiro v. Albanese*, 97 N.J. 668, 483 A.2d 186 (1984). There, the governor of New Jersey issued an executive order which directed the state's commissioner of corrections to develop a program to reim-

burse counties for use of county jails by state prisoners. A county in New Jersey brought suit to increase the amount of reimbursement from what the commissioner of corrections allowed to an amount more closely reflecting the weighted average *per diem* cost to maintain an inmate. The court upheld the executive order, holding that because it was issued pursuant to the governor's emergency powers, authorized by statute, the commissioner of corrections had complete discretion in determining the amount that counties would be reimbursed. *See Worthington v. Fauver*, 88 N.J. 183, 440 A.2d 1128 (1982).

We are not deciding today whether the state will be held liable for maintaining its prisoners in a county jail when the governor issues an executive order pursuant to his emergency powers.

reprieve, the question should also be examined as to what power the governor possesses to direct the sheriff to retain in his custody a person lawfully convicted and sentenced to a state penitentiary for a felony offense.

As pointed out by the majority, this case does not present a situation where the governor has acted pursuant to emergency powers conferred upon him. W.Va.Code § 15–5–6 [1973]; *See State ex rel. Dodrill v. Scott,* 177 W.Va. 452, 352 S.E.2d 741 (1986). As this Court noted in *Dodrill, supra*

> although imprisonment in a pentientiary (sic) is under some penal statutes a matter of discretion, that discretion is vested in the judiciary rather than the executive. In the absence of an exercise of such discretion by the court, the statute creates a mandatory, non-discretionary duty to imprison those so convicted in the state.

177 W.Va. at 456, 352 S.E.2d at 744–45.

Similarly, W.Va.Code § 62–13–5 [1977] provides in part that:

> All persons committed by courts of criminal and juvenile jurisdiction for custody in penal, correctional or training institutions under the jurisdiction of the commissioner of corrections shall be committed to an appropriate institution, but the commissioner (or the director if the commissioner so approves) shall have the authority to and may order the transfer of any person to any appropriate institution within the department.

Thus the language of the statute places a mandatory duty on the commissioner to accept those persons sentenced by the courts for confinement in state penal institutions. *See Dodrill,* 177 W.Va. at 456, 352 S.E.2d at 745.

Consequently, the only time the governor, as executive, could direct sheriffs to hold prisoners, would be pursuant to the emergency powers enumerated in W.Va. Code § 15–5–6 [1973].[1] In the present case, no such emergency powers were in effect at the time the reprieves were issued.

The majority would permit the governor not only to abdicate his responsibilities by a clever manipulation of words, but also essentially deposit his problem in the lap of the counties. I concur with the majority that certainly the State must be required to pay the reasonable maintenance and medical expenses incurred by the counties if the State is permitted to continue this practice; but I strongly dissent with their holding that this practice should be permitted to continue.

The writ should be granted and the governor required to discontinue a practice that is a ruse. The governor would then have two choices ... to either genuinely reprieve the prisoners in question and accept the consequent responsibility for any harm that might come to the community of law-abiding people; or else, live up to the State's duty to keep and house in a constitutional manner those persons' lawfully sentenced to the State penitentiaries.

---

1. *But see* W.Va.Code § 5–1–16 [1923] which gives the Governor the power to remit fines and penalties, along with the power to commute sentences, and grant reprieves, paroles and pardons.