420 S.E.2d 922

STATE of West Virginia ex rel.
Ricky Lee SMITH, Plaintiff
Below, Petitioner,

v.

Major General Joseph J. SKAFF, Secre-
tary, Department of Public Safety;
Nicholas J. Hun, Commissioner, Divi-
sion of Corrections; Jerry Dietrick, Su-
perintendent, Eastern Regional Jail;
and West Virginia Board of Probation
and Parole, Defendants Below, Respon-
dents.

No. 21127.

Supreme Court of Appeals of
West Virginia.

Submitted May 6, 1992.

Decided July 23, 1992.

David H. Sanders, Public Defender Corp., Martinsburg, for petitioner.

Rita Stuart, Asst. Atty. Gen., Charleston, for respondents Major General Joseph J. Skaff and Nicholas J. Hun.

Richard M. Gutmann, Asst. Atty. Gen., Charleston, for respondents West Virginia Regional Jail and Correctional Facility Authority and West Virginia Bd. of Probation and Parole.

WORKMAN, Justice:

This case is before the Court on a petition of habeas corpus whereby the petitioner Ricky Lee Smith seeks to invoke the original jurisdiction of this Court as the only remedy available to him to obtain release from his illegal incarceration in the Eastern Regional Jail in Martinsburg, West Virginia (hereinafter referred to as the regional jail).[1] The petitioner argues that 1) he has been illegally confined in the regional jail; 2) he has been denied educational, vocational, rehabilitative, training, recreational and work programs as mandated by the statute;[2] and 3) he has effectively been denied parole. We agree with the petitioner in his assertion that when the respon-

1. An "Amicus Curiae Memorandum" was filed with the Court on July 6, 1991, by Deborah A. Lawson, counsel for similarly situated petitioner, Raymond Schroyer. On July 10, 1992, a response to the amicus brief was filed by the respondents in this case. Pursuant to West Virginia Supreme Court of Appeals Rule of Appellate Procedure 19, the motion for the amicus curiae brief was granted and considered by the Court.

2. The facts of this case reveal that during the petitioner's incarceration in the regional jail, he participated in several rehabilitative and educational programs, including Alcoholics Anonymous, Drug Addicts Anonymous, a substance

dent Division of Corrections fails to transfer prisoners sentenced to the West Virginia Penitentiary (hereinafter referred to as WVP) to that facility from county or regional jails, it is not acting in compliance with our decision in *State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 352 S.E.2d 741 (1986). Moreover, it is the obligation of the respondent Board of Probation and Parole (hereinafter referred to as Parole Board) to conduct a parole hearing pursuant to *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980) and West Virginia Code § 62–12–13 (1989) regardless of whether an inmate remains in a county or regional jail or has been transferred to a Division of Corrections facility. Thus, we will grant petitioner's writ as moulded by this Court.

The record in this case reveals that on May 21, 1991, the petitioner entered into a plea agreement to one count of uttering. He was subsequently sentenced on June 24, 1991, to a prison term of one to ten years in the WVP. The petitioner was given an effective sentencing date of March 20, 1991, which reflected ninety-five days credit for time served awaiting trial at the regional jail.

■ The petitioner served approximately thirteen months and four days in the regional jail before he was transferred to the Huttonsville Correctional Center (hereinafter referred to as HCC) in Huttonsville, West Virginia, on April 23, 1992, as a result of the filing of this action.[3]

Further, while the respondent Parole Board scheduled the petitioner for parole consideration on May 20, 1992, the scheduling did not occur until after the petitioner was transferred to HCC. The record indicates that the petitioner became eligible for parole consideration in March 1992. By letter dated February 4, 1992, however, the respondent Parole Board informed the petitioner that he could not be considered for parole until he was transferred into the Division of Corrections. At that time, according to the petitioner, there was approximately a two-year waiting list for transfer into the Division of Corrections.

## TRANSFER

■ The first issue addressed by this Court is whether the petitioner was illegally confined in the regional jail. The petitioner asserts that West Virginia Code §§ 28–5A–7 (1986) and 62–13–5 (1977), along with this Court's decision in *Dodrill*, require the Division of Corrections to accept for confinement all persons sentenced to state penal facilities and prohibit these individuals from remaining in county jails or regional jails upon sentencing to a state penal facility. *See* 177 W.Va. at 452, 352 S.E.2d at 741. The respondents West Virginia Regional Jail and Correctional Facility Authority (hereinafter referred to as the Authority) and the Parole Board maintain that the regional jail is not governed by county officials or agencies and therefore it is a state facility run by a state agency. The respondents Major General Skaff and Mr. Hun argue that the Division of Corrections is currently utilizing all available space to house inmates and still maintain the safe and secure operation of its institutions. Consequently, these respondents indicate that it is not possible to move inmates from the jails to the state facilities at a faster rate. Moreover, these respondents assert that this Court in the *Dodrill*

and abuse counselling program and a GED program. Moreover, there were a number of other educational and rehabilitative programs available in which the petitioner chose not to participate. Consequently, upon review of the record in this case, we find no merit to this argument.

**3.** Even though the petitioner was transferred into the Division of Corrections, we do not find that the petitioner's claim for habeas corpus relief is moot, since these same issues may be repeatedly presented to this Court, yet will es-

cape review if the Division of Corrections merely transfers the petitioners to avoid having to resolve the issues raised. *See* Syl. Pt. 1, *Tasker v. Griffith*, 160 W.Va. 739, 238 S.E.2d 229 (1977); *see also Israel ex rel. Israel v. West Virginia Secondary Schools Activities Comm'n*, 182 W.Va. 454, 388 S.E.2d 480 (1989). Moreover, according to the counsel for the Division of Corrections, at the time of oral argument approximately 378 inmates across the state were awaiting transfer into Division of Correction facilities.

decision did not require the Division of Corrections to immediately transfer all the inmates from the jails to Division of Corrections facilities, but rather called upon the executive and legislative branches of government to develop and carry out a plan which fully addresses the penological needs of the state and this plan is currently being carried out under the auspices of this Court.

By definition a regional jail is "any facility operated by the authority and used jointly by two or more counties for the confinement, custody, supervision or control of persons convicted of misdemeanors or awaiting trial or *awaiting transportation to a state correctional facility.*" W.Va. Code § 31–20–2(n) (Supp.1992) (emphasis added). Thus, while the respondents Authority and Parole Board imply that the regional jail is a state correctional facility just like the WVP and the HCC, it is evident from the above-mentioned definition that the regional jails are not operated by the Division of Corrections nor under their control. *See id.* at § 31–20–2(m).

Next, West Virginia Code § 25–1–15 (Supp.1992) [4] requires that "all persons sentenced to the West Virginia penitentiary *shall,* upon imposition of such commitment or sentence, undergo diagnosis and classification in a diagnostic and classification division located at the Huttonsville correctional center...." (emphasis added). Additionally, West Virginia Code § 62–13–5 (1989) specifically requires that

[a]ll persons committed by courts of criminal ... jurisdiction for custody in penal, correctional or training institutions under the jurisdiction of the commissioner of corrections *shall be committed to an appropriate institution,* but the commissioner ... shall have the authority to and may order the transfer of any person to any appropriate institution *within* the department. (emphasis added).

■ Both West Virginia Code §§ 25–1–15 and 62–13–5 have been interpreted by this Court. Specifically, we found that

[t]he language of the statute is mandatory, and requires the Commissioner of the Department of Corrections to accept for confinement all persons sentenced by courts of this State to state penal facilities. The jails of various counties, however, are not institutions within the West Virginia Department of Corrections. Thus *W.Va.Code* 62–13–5 [1977] prohibits the Commissioner of the Department of Corrections from lodging or forcing to be lodged in a county jail any person sentenced by a circuit court of this State to a state penal facility.

*Dodrill,* 177 W.Va. at 456, 352 S.E.2d at 745. Likewise, we also found the statutory language of West Virginia Code § 25–1–15 to be mandatory. *See id.,* 177 W.Va. at 456, 352 S.E.2d at 745. Consequently, "[o]ur statutory scheme thus not only contemplates, but mandates, a system in which convicts sentenced to the penitentiary are received by the Department of Corrections and incarcerated in a *State* penal facility." *Id.,* 177 W.Va. at 457, 352 S.E.2d at 745; *see County Comm'n of Mercer County v. Dodrill,* 182 W.Va. 10, 385 S.E.2d 248 (1989).

This mandate, however, is not being followed. The facts before us reveal that the petitioner had to wait approximately thirteen months before he was transferred to a Division of Corrections facility. Further, the record also indicates that some 378 inmates across the state are being housed in county or regional jails while waiting to be transferred to a Division of Corrections facility. According to the petitioner, the waiting list for these transfers is approximately two years. These facts clearly indicate that the Division of Corrections is not in compliance with the *Dodrill* decision and this noncompliance must be remedied.

■ The statutory scheme of this state places a nondiscretionary duty upon the Division of Corrections to incarcerate those inmates who are sentenced to the penitentiary in a state penal facility operated by the Division of Corrections. Hence, the

---

4. West Virginia Code § 25–1–15 was formerly    West Virginia Code § 28–5A–7 (1986).

Division of Corrections is prohibited from lodging inmates in a county or regional jail facility absent the availability of space in these facilities[5] once the inmates have been sentenced to a Division of Corrections facility. *See Dodrill*, 177 W.Va. at 456–57, 352 S.E.2d at 745.

We have recognized the problem with overcrowding in state penal facilities.[6] The *Dodrill* decision specifically mandated that it is the duty of the executive and legislative branches of government to resolve the unconstitutional overcrowding problems, and in *Crain v. Bordenkircher*, 180 W.Va. 246, 376 S.E.2d 140 (1988), we ordered the Division of Corrections to build a new prison by July 1, 1992. The failure to comply with this order has a convoluted history, most recently culminating in the granting of an extension of time to July 1, 1994, for the building of the new prison. *See Crain v. Bordenkircher*, 187 W.Va. 596, 420 S.E.2d 732 (1992) (Extending the original closing date of the WVP to July 1, 1994); *see also Dodrill*, 177 W.Va. at 456–57, 352 S.E.2d at 745. It is tragic that, despite the fact that ample time has been provided for this obligation to have been met, it has not been. Moreover, it is extremely unfair for the Division of Corrections to shuffle this problem onto the county and regional jails. Not only are these facilities in no better position to cope with this problem in view of their own fiscal limitations with all the overcrowding and understaffing problems attendant thereto, but it simply is not their responsibility under the law.

It is certainly not this Court's desire to effectively unleash upon the innocent public convicted criminals who have not completed their minimum sentences. On the other hand, the problem of overcrowding must be remedied and it would be profoundly unfair not only to the county and regional jails, but also to the inmates living in grossly inadequate and overcrowded jail facilities, to place the resolution of the problem on the back burner until the completion of the new prison. Thus, out of an abundance of fairness and forbearance, we direct the Division of Corrections to develop a plan within the next six months to provide some temporary arrangement to meet its obligation to house and detain all those lawfully sentenced to a state penal facility until such time as the new prison is completed. At the conclusion of this period, the failure of the Division of Corrections to live up to its legal responsibility will no longer be tolerated.

### PAROLE HEARING

■ We next address the issue of the petitioner's eligibility for parole consideration. The petitioner argues that he first became eligible for a parole hearing in March 1992 and that the Parole Services Division informed him that he could not be considered for parole until his transfer into the Division of Corrections. The respondent Parole Board asserts that it is fiscally and physically unable to hold parole consideration proceedings in the county and regional jails.

We reiterate our holding in *County Commission of Mercer County*, 182 W.Va. at 14, 385 S.E.2d at 252, that the state is required to pay the county and regional jails "reasonable maintenance and medical expenses related to ... [those] individual[s] which are incurred by the county due to ... [the] delay [in transfer to the Division of Corrections facility]."

Finally, it is important also to note that a 100 bed addition at the HCC is currently under construction and is scheduled to be completed in September 1992.

---

**5.** West Virginia Supreme Court of Appeals Administrator Ted Philyaw toured the regional jail at Flatwoods, West Virginia, with Billy Burke, Director of the Regional Jail Authority on July 15, 1992. Mr. Burke represented to Mr. Philyaw that this 200 bed facility is scheduled for completion on January 2, 1993. There is another 300 bed regional jail under construction in Kanawha County which is scheduled to be completed in April 1993. Two more regional jails are under construction at Moundsville and Beckley with the completion dates set for August 1993 and January 1994, respectively. The Moundsville facility is a combination regional jail and medium security prison with a 400 bed capacity.

**6.** *See Crain v. Bordenkircher*, 176 W.Va. 338, 342 S.E.2d 422 (1986).

■ West Virginia Code § 62–12–13 (1989) sets forth all the requirements which must be met by an inmate before he can be considered eligible for parole. "In the case of a person sentenced to any penal institution of this state, it *shall* be the duty of the board, as soon as such person becomes eligible, to consider the advisability of his or her release on parole." W.Va.Code § 62–12–13(a)(5). (emphasis added). The eligibility requirements include that the inmate "[s]hall have served the minimum term of his or her indeterminate sentence, or shall have served one forth of his or her definite term sentence...." *Id.* at § 62–12–13(a)(1)(A). Furthermore, this Court has found that "[o]ur parole statute, W.Va. Code, 62–12–13 (1979), creates a reasonable expectation interest in parole to those prisoners meeting its objective criteria." Syl. Pt. 1, *Mohn,* 165 W.Va. at 55, 267 S.E.2d at 184; *accord* Syl. Pt. 1, *Vance v. Holland,* 177 W.Va. 607, 355 S.E.2d 396 (1987). Moreover, the statute requires a hearing before the Parole Board by providing that "[b]efore releasing any penitentiary prisoner on parole, the board of parole shall arrange for the prisoner to appear in person before the board...." W.Va.Code § 62–12–13(d)(4); *see* Syl. Pt. 4, in part, *Mohn,* 165 W.Va. at 55, 267 S.E.2d at 184 ("Each inmate may personally appear before the parole board and give oral and documentary evidence") Finally, if upon parole consideration, parole is denied, "the board shall at least once a year reconsider and review the case of every prisoner so eligible, which reconsideration and review shall be by the entire board." W.Va.Code § 62–12–13(a)(5).

An additional requirement for parole consideration is that the inmate "[s]hall have maintained a record of good conduct in prison for a period of at least three months immediately preceding the date of his or her release on parole." *Id.* at § 62–12–13(a)(3). It is without dispute from the respondents that this statutory provision only stands for the proposition that an inmate is required to be on good behavior for the three months immediately prior to being considered for parole regardless of where he is actually incarcerated. Hence, this statutory provision does not require that he actually be housed in a Division of Corrections penal facility prior to being considered for parole.

The fundamental issue to be resolved is whether the Parole Board must consider the petitioner for parole when he is eligible for such consideration, despite the fact that he is lodged in a county or regional jail awaiting placement in the penitentiary. According to the record, the Parole Board is currently only holding parole hearings at the three state prisons and the three work release centers. It is clear, however, that the relevant statute envisions that these parole hearings can occur in county jails as well as correctional facilities. Specifically, West Virginia Code § 62–12–13(d)(4) provides, in pertinent part, that "[t]he board and its designated agents shall at all times have access to inmates imprisoned in any penal or correctional institutions of this state or in any city or county jail in this state...."

■ It is apparent from these statutory provisions that the Parole Board has a mandatory duty not only to consider an inmate for parole once the inmate becomes eligible, but also to conduct a parole hearing, if necessary, at any facility where the inmate is being lodged, be it a facility within the Division of Corrections or a county or regional jail. Accordingly, it is a violation of West Virginia Code § 62–12–13 for the Parole Board to refuse to consider an inmate for parole until after his transfer into a Division of Corrections facility when he is otherwise eligible for such consideration. Thus, the Parole Board is hereby ordered to conduct the appropriate hearings for inmates who are currently eligible for parole regardless of where the inmate is being lodged.

■ We are not unmindful of both the monetary and logistical restraints this decision to hold parole consideration proceedings in county and regional jails places

upon the Parole Board.[7] Thus, until construction of the new penitentiary is completed, the Parole Board has the latitude to give parole consideration to those inmates being detained in county or regional jails who have been convicted of nonviolent crimes upon review of their records. When the Parole Board determines that an inmate has sufficiently met the requirements of West Virginia Code § 62–12–13, then it may grant parole without actually holding a hearing at the facility where the inmate is housed.

Based upon the foregoing opinion, the Division of Corrections is ordered to comply with the *Dodrill* decision and the Parole Board is ordered to conduct appropriate hearings for inmates eligible for parole.

Writ granted as moulded.

---

**7.** West Virginia Code § 62–12–12 (1989) established the Parole Board as a three-member body. One possible long-term solution to meeting the demand for parole hearings is for corrections and parole authorities to seek legislative change broadening the membership of the Parole Board and authorizing panels of Parole Board members to hear and consider cases.