428 S.E.2d 54

**STATE of West Virginia Ex Rel. Ricky Lee SMITH, Petitioner,**

v.

**Major General Joseph J. SKAFF, Secretary, Department of Public Safety; Nicholas J. Hun, Commissioner, Division of Corrections; Jerry Dietrick, Superintendent, Eastern Regional Jail; and West Virginia Board of Probation and Parole, Respondents.**

No. 21127.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided Feb. 25, 1993.

David H. Sanders, Public Defender Corp., Martinsburg, for petitioner.

Rita A. Stuart, Asst. Atty. Gen., Charleston, for respondents Skaff and Hun.

Jack C. McClung, Charleston, for amicus curiae.

PER CURIAM:

On July 23, 1992, we issued a moulded writ of habeas corpus in this case with regard to requiring the West Virginia Board of Probation and Parole to hold parole eligibility hearings. *State ex rel. Smith v. Skaff*, 187 W.Va. 651, 420 S.E.2d 922 (1992).[1] A further claim made by the relator, who is a prisoner remanded to the custody of the Division of Corrections, was that he be released from custody partly on the ground that he had been illegally lodged in a regional jail.

■ In our previous opinion, we recognized that the relator's confinement was illegal under our decision in *State ex rel.*

---

1. Syllabus Points 3, 4, and 5 of *State ex rel. Smith v. Skaff, supra,* state:

"3. The Parole Board has a mandatory duty not only to consider an inmate for parole once the inmate becomes eligible, but also to conduct a parole hearing, if necessary, at any facility where the inmate is being lodged, be it a facility within the Division of Corrections or a county or regional jail.

"4. It is a violation of West Virginia Code § 62–12–13 (1989) for the Parole Board to refuse to consider an inmate for parole until after his transfer into a Division of Corrections facility when he is otherwise eligible for such consideration.

"5. Until construction of the new penitentiary is completed, the Parole Board has the latitude to give parole consideration to those inmates being detained in county or regional jails who have been convicted of nonviolent crimes upon review of their records. When the Parole Board determines that an inmate has sufficiently met the requirements of West Virginia Code § 62–12–13 (1989), then it may grant parole without actually holding a hearing at the facility where the inmate is housed."

*Dodrill v. Scott,* 177 W.Va. 452, 352 S.E.2d 741 (1986).[2] We also recognized, however, the problem of overcrowding in state penal facilities, and the fact that the State is in the process of building a new prison to relieve the problem. *See Crain v. Bordenkircher,* 187 W.Va. 596, 420 S.E.2d 732 (1992); *Crain v. Bordenkircher,* 180 W.Va. 246, 376 S.E.2d 140 (1988). Accordingly, we withheld ruling on this aspect of the relator's petition and ordered the Division of Corrections to develop within six months a plan "to provide some temporary arrangement to meet its obligation to house and detain all those lawfully sentenced to a state penal facility until such time as the new prison is completed." 187 W.Va. at 657, 420 S.E.2d at 926.

On December 28, 1992, the Division of Corrections filed its plan with this Court. By order dated January 6, 1993, we deferred action pending a review of the plan by Patrick D. McManus, the Special Master appointed by this Court to oversee the Division's efforts to bring the state penal system within constitutional requirements. *See Crain v. Bordenkircher,* 176 W.Va. 338, 342 S.E.2d 422 (1986). On February 8, 1993, this Court received a report from the Special Master generally approving the Division's plan.

The plan submitted by the Division of Corrections has three components. First, a new 100–bed dormitory has been constructed at the Huttonsville Correctional Center to house jail-confined offenders currently awaiting transfer to a state correctional facility. Second, the Division of Corrections has proposed the acquisition and renovation of the former Denmar Hospital in Hillsboro in order to accommodate approximately 150 minimum and medium security inmates. Finally, the Division of Corrections has proposed utilizing regional jails, staffing a portion of each with its employ-

ees, as a method of housing another 150 inmates.

As previously noted, the Special Master's report on the Division of Corrections' plan is generally favorable. First, he notes that the new dormitory at Huttonsville has provided some immediate relief. Second, he states that the Denmar proposal appears to be a very cost-effective plan which could provide significant short-term relief. Third, he views with approval the Division's recognition that it should make a financial contribution to the operation of the regional jail system to the extent that its facilities are used to house state prisoners. Finally, the Special Master urges that alternative sentencing be considered as an additional tool for reducing jail overcrowding.

The Division of Corrections has complied with our directive to develop a plan for the temporary housing of state prisoners. We believe that its plan would improve what is currently a dire situation. We recognize, as does the Division of Corrections, that legislative funding is necessary to implement its plan. We trust that the necessary funding of its proposals can be secured and its plan expeditiously implemented.

■ We decline to intervene further in this matter as the limited issue initially raised in this case has been met. We do not find the petitioner has status to pursue this matter further as his primary questions are now moot. As we stated in Syllabus Point 1 of *State ex rel. West Virginia Secondary School Activities Commission v. Oakley,* 152 W.Va. 533, 164 S.E.2d 775 (1968):

> " 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Pt. 1, syllabus, *State ex rel. Lilly v.*

---

**2.** In Syllabus Point 1 of *State ex rel. Smith v. Skaff, supra,* we stated:

> "The statutory scheme of this state places a nondiscretionary duty upon the Division of Corrections to incarcerate those inmates who are sentenced to the penitentiary in a state penal facility operated by the Division of Cor-

rections. Hence, the Division of Corrections is prohibited from lodging inmates in a county or regional jail facility absent the availability of space in these facilities once the inmates have been sentenced to a Division of Corrections facility."

See also *State ex rel. Dodrill v. Scott, supra.*

*Carter,* 63 W.Va. 684 [60 S.E. 873 (1908)]."

*See also State ex rel. Miller v. Locke,* 162 W.Va. 946, 253 S.E.2d 540 (1979).

For the reasons stated above, we conclude that the issue of the relator's unlawful confinement in the regional jail is now moot, and to that extent this case is dismissed. The moulded writ of habeas corpus heretofore issued by this Court as to the West Virginia Board of Probation and Parole remains in effect as to all other issues raised by the relator. The writ is denied.

Case dismissed.