508 S.E.2d 122

STATE of West Virginia ex rel. Alen STULL, et al.; Dennis L. Hale; William E. Eren, et al.; Daniel R. Maynard; Michael W. Grubbs; Matthew Withrow; Jerry Wilson; Michael D. Salmons; James Brotosky; Roy T. Withrow; Elijah D. Martin; Robert L. Williams, Jr.; William E. Eren, et al., Petitioners,

v.

William K. DAVIS, Commissioner, Department of Corrections, and Steven D. Canterbury, Director of the Regional Jail Authority, Respondents.

Patrick D. McManus, Special Master.

Nos. 24459–24470, 24472.

Supreme Court of Appeals of West Virginia.

Submitted March 24, 1998.

Decided July 17, 1998.

McCuskey, J., issued opinion concurring in part and dissenting in part.

George Castelle, Esq., Chief Public Defender, Jeffrey W. Molenda, Esq., Assistant Public Defender, Charleston, West Virginia, Attorneys for Petitioners.

Leslie K. Kiser, Esq., Assistant Attorney General, Charleston, West Virginia, Attorney for Department of Corrections.

Chad M. Cardinal, Esq., Assistant Attorney General, Charleston, West Virginia, Attorney for Steven D. Canterbury.

PER CURIAM: [1]

These cases are before this Court upon a number of *pro se* petitions from inmates sentenced to terms of confinement in facilities of the West Virginia Division of Corrections. The inmate petitioners, Alen Stull, *et al.*, are currently lodged in regional and county jails in West Virginia while awaiting transfers to the Division. Substantial delays in the transfers have occurred because of alleged overcrowding of the Division's facilities. The petitioners assert that their continued incarceration in regional and county jails is unlawful and has resulted in a denial of the rehabilitative programs to which they are entitled. Accordingly, the petitioners seek prompt transfer to Division of Corrections facilities or release from confinement.

On October 1, 1997, this Court issued a rule against the Commissioner of the Division of Corrections directing him to show cause why relief in mandamus should not be awarded to the petitioners. Subsequently, this Court ordered that the Executive Director of the Regional Jail and Correctional Facility Authority be joined as a respondent. Moreover, a Special Master was appointed to assist this Court in the review of this matter, and the Kanawha County Public Defender was appointed to represent the petitioners. *See, W.Va.Code,* 29–21–1 [1989], *et seq.*

This Court has before it the *pro se* petitions, all matters of record, including the report of the Special Master, and the briefs and argument of counsel. For the reasons stated below, and particularly in view of the decisions of this Court in *State ex rel. Dodrill v. Scott,* 177 W.Va. 452, 352 S.E.2d 741 (1986), and *State ex rel. Smith v. Skaff,* 187 W.Va. 651, 420 S.E.2d 922 (1992), this Court is of the opinion that relief in mandamus is warranted and that the petitioners, and others similarly situated, are entitled to prompt transfer to Division of Corrections facilities. Specifically, we direct the Commissioner of the Division of Corrections to submit to this Court within 60 days a full and complete plan for the immediate transfer to Division facilities of at least 50% of all inmates currently lodged in regional and county jails who are awaiting such transfer. In addition, we direct the Commissioner of the Division of Corrections to submit to this Court, as soon as practicable, a full and complete long-range plan for the transfer of such inmates to Division of Corrections facilities. Both plans shall be reviewed by the Special Master who shall promptly submit separate reports, as to the adequacy of each plan, to this Court.

I.

As indicated above, the petitioners are inmates sentenced to Division of Corrections facilities who have, nevertheless, been lodged for extended periods of time in regional and county jails. In fact, the record indicates that the petitioners have been awaiting transfer to Division facilities for periods between six months and two years from the date of sentencing. The record further indicates that there are currently in excess of 700 inmates who are similarly situated. The regional and county jails are reimbursed by the Division of Corrections for housing these inmates. The Division maintains that the problem is due to the overcrowding of Division facilities such as the Mount Olive Correctional Complex, a penitentiary for maximum-medium security inmates, the Huttonsville Correctional Center, a penitentiary for medium security inmates, and the Anthony Center, a facility for youthful offenders. *W.Va.Code,* 25–1–3 [1994]. According to the Division, the prison popula-

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

tion in West Virginia is expanding at an annual rate of just over 9%.

Following the issuance of the rule to show cause in October 1997, the Commissioner of the Division of Corrections filed a response in which the Division's policy for transferring inmates from regional and county jails to Division of Corrections facilities was set forth. That policy, known as Policy Directive 664.01 (effective January 16, 1997), indicated that transfers to Division facilities were made upon the basis of bed availability and that parole eligibility dates, medical needs and disciplinary requirements were of primary importance in determining which inmates were transferred. *See, W.Va.Code,* 25–1–5 [1945], concerning the Division's rule making authority. As Policy Directive 664.01 stated in part: "The philosophy of the Division of Corrections is to transfer inmates, on the basis of bed availability, consistent with classification procedures, in the most expeditious manner without compromising public or institutional security."

In a *per curiam* order entered herein on December 8, 1997, however, this Court indicated that Policy Directive 664.01 did not satisfy the Division's nondiscretionary duty "to incarcerate those inmates who are sentenced to the penitentiary in a state penal facility operated by the Division of Corrections." *See,* syl. pt. 1, *Smith, supra.* As the order stated: "While it appears that the DOC has promulgated a policy to manage the overcrowding dilemma in the most effective manner possible, the fact remains that the DOC is not in compliance with our decisions in *Dodrill* and *Smith.* This noncompliance cannot continue indefinitely." Consequently, pursuant to the order of December 8, 1997, the Division was directed to submit a plan to this Court and to the West Virginia Legislature outlining a proposal for addressing the overcrowding problem.

On January 30, 1998, the Division of Corrections submitted a 1 page "Master Plan to Manage West Virginia's Overcrowding Prison Population." The Plan simply listed proposals to increase bed availability at facilities of the Division of Corrections over a period of years.[2] Attached to the Plan were various statistical reports concerning the expected growth of the prison population in West Virginia.

The report of the Special Master, however, filed with this Court on March 21, 1998, concluded that the Plan was inadequate to meet the transfer and overcrowding problems raised by the petitioners. Specifically, the report stated:

[T]he single page which is labeled "Master Plan" and lists a series of projects which could increase bed capacity is a plan only in the narrowest sense of the word. When states or other jurisdictions develop written plans for managing inmate population problems in the 1990's, they first spend a great deal of time and energy making certain that they understand the

---

**2.** The Master Plan to Manage West Virginia's Overcrowding Prison Population submitted to this Court by the Division stated in its entirety:

| Year | Beds to Be Added | Plan |
|---|---|---|
| 1997 | · | Adult Prison Beds 2445 |
| 1998 | 240 | Add beds at HCC, projected completion date 12/98. |
| | 60 | Contract with Ohio County Jail to House 60 inmates |
| | 70 | Contract with McDowell County Jail to House 70 inmates |
| | 35 | Open Smithers Correctional Treatment Center |
| | 15 | Add 15 beds at the Huntington, Charleston and Beckley Centers |
| | 115 | Add 115 beds to Anthony Correctional Center |
| | 100 | Add 100 beds to Pruntytown Correctional Center |
| | ·450 | Transform Colin Anderson into a Correctional Center |
| 1999 | 100 | Add 100 Beds to HCC |
| | 35 | Add 35 beds to Smithers Center |
| | 250 | Open Lakin Correctional Center—250 beds |
| 2001 | 240 | Add 240 Maximum Security Beds at MOCC |
| | 1800 | Build new Correctional Center for 1800, infrastructure to support 3600 |
| 2005 | 1800 | Add 1800 beds to the new Correctional Center |

problems they are attempting to solve. The Plan which I have reviewed contains no hint that [it] was the result of a serious and thoughtful planning process. * * * In summary, my review of the Plan submitted by the Division of Corrections suggests that most of the steps necessary to develop a legitimate inmate population management plan have not yet occurred. As a result, I do not recommend that plan as a sound basis for finally addressing the overcrowding problem which has brought the DOC before the Court.

As stated above, the petitioners seek prompt transfer to Division of Corrections facilities or release from confinement. The Division, on the other hand, asks this Court to allow it to pursue and implement the above Plan without judicial intervention.

## II.

■■■ The *pro se* petitions filed herein constitute, in effect, original proceedings in mandamus cognizable under the jurisdiction of this Court. W.Va. Const. art. VIII, sec. 3; W.Va.R.App.P. 14; *W.Va.Code*, 53–1–2 [1933]. As this Court observed in *State ex rel. Bronaugh v. City of Parkersburg,* 148 W.Va. 568, 572, 136 S.E.2d 783, 785–86 (1964): "It has been authoritatively stated that the primary purpose or function of a writ of mandamus is to enforce an established right and to enforce a corresponding imperative duty created or imposed by law." Syl. pt. 1, *Brumfield v. Board of Education of Logan County,* 121 W.Va. 725, 6 S.E.2d 238 (1939); syl. pt. 6, *State ex rel. Matheny v. County Court of Wyoming County,* 47 W.Va. 672, 35 S.E. 959 (1900). More specifically, syllabus point 3 of *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981), holds:

Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

*Parks v. Board of Review,* 188 W.Va. 447, 452, 425 S.E.2d 123, 128 (1992); syl., *Valley Camp Coal Co. v. Robinson,* 180 W.Va. 108,

375 S.E.2d 579 (1988); *Reed v. Hansbarger,* 173 W.Va. 258, 261, 314 S.E.2d 616, 619–20 (1984); syl. pt. 1, *Meadows v. Lewis,* 172 W.Va. 457, 307 S.E.2d 625 (1983); 12B M.J. *Mandamus* § 3 (1992); 52 Am.Jur.2d *Mandamus* § 64 (1970).

In *State ex rel. Dodrill v. Scott, supra,* the Governor of West Virginia, in 1986, issued an executive order directing the Commissioner of the Department of Corrections to accept no further inmates into the Department's custody until such time as the conditions of the Department's institutions were "appropriate and warranted the acceptance of additional inmates." 177 W.Va. at 454, 352 S.E.2d at 743. The executive order was implemented as a result of overcrowding of the Department's facilities. Soon after, the Circuit Court of Jackson County ruled that the executive order was invalid and ordered the Commissioner to accept inmates sentenced to the Department's custody from that county. The Commissioner challenged the ruling of the Circuit Court of Jackson County in this Court by seeking relief in prohibition.

This Court, in *Dodrill,* however, confirmed the invalidity of the executive order and denied the requested relief. Noting that many statutory sentencing provisions in this State provide "that a person convicted of such and such a crime *shall* be imprisoned in the *penitentiary,*" 177 W.Va. at 456, 352 S.E.2d at 744 (emphasis in original), this Court stated:

The legislature has thus imposed upon the judiciary, the Department of Corrections, and all other officials involved in the post-conviction custodial care of convicted felons, a mandatory, nondiscretionary duty to imprison these convicts in facilities '*provided by the State.*' Penal statutes invoking such mandatory language therefore do not permit the imprisonment of those convicted under them in *county* facilities.

177 W.Va. at 456, 352 S.E.2d at 744 (emphasis in original).

Moreover, this Court, in *Dodrill,* referred to *W.Va.Code,* 62–13–5 [1977], which states in part: "All persons committed by courts of criminal and juvenile jurisdiction for custody in penal, correctional or training institutions under the jurisdiction of the commissioner of corrections shall be committed to an *appro-*

*priate institution*[.]" (emphasis added) Concluding that statutory language to be mandatory, this Court determined that *W.Va.Code,* 62–13–5 [1977]:

> [R]equires the Commissioner of the Department of Corrections to accept for confinement all persons sentenced by courts of this State to state penal facilities. The jails of various counties, however, are not institutions within the West Virginia Department of Corrections. Thus *W.Va. Code,* 62–13–5 [1977] prohibits the Commissioner of the Department of Corrections from lodging or forcing to be lodged in a county jail any person sentenced by a circuit court of this State to a state penal facility.

177 W.Va. at 456, 352 S.E.2d at 745.[3]

■ Similarly, in *State ex rel. Smith v. Skaff, supra,* this Court awarded relief in habeas corpus to an inmate incarcerated in the Eastern Regional Jail in Martinsburg, West Virginia, who had waited 13 months for transfer to a Division of Corrections facility. Specifically, in *Smith,* this Court directed the Division of Corrections to develop a plan to provide "some temporary arrangement to meet its obligation to house and detain all those lawfully sentenced to a state penal facility until such time as the new prison [the Mt. Olive Correctional Complex] is completed." 187 W.Va. at 655, 420 S.E.2d at 926. Reaffirming the principles expressed in *Dodrill,* syllabus point 1 of *Smith* holds:

> The statutory scheme of this state places a nondiscretionary duty upon the Division of Corrections to incarcerate those inmates who are sentenced to the penitentiary in a state penal facility operated by the Division of Corrections. Hence, the Division of Corrections is prohibited from lodging inmates in a county or regional jail facility absent the availability of space in these

facilities once the inmates have been sentenced to a Division of Corrections facility.

In so holding, this Court, in *Smith,* observed that it is "extremely unfair" for the Division of Corrections to shift the prison overcrowding problem to the regional and county jails. 187 W.Va. at 655, 420 S.E.2d at 926. As the opinion in *Smith* states: "Not only are these [regional and county jail] facilities in no better position to cope with this problem in view of their own fiscal limitations with all the overcrowding and understaffing problems attendant thereto, but it simply is not their responsibility under the law." 187 W.Va. at 655, 420 S.E.2d at 926.[4]

Here, as stated above, the petitioners assert that their continued incarceration in regional and county jails is unlawful and has resulted in a denial of the rehabilitative programs to which they are entitled. In the latter regard, the petitioners cite *Cooper v. Gwinn, supra,* in which this Court recognized that "the Legislature requires rehabilitation to be the primary goal of the West Virginia corrections system." 171 W.Va. at 252, 298 S.E.2d at 788. The Division of Corrections, on the other hand, asks this Court to allow it to pursue and implement the above Master Plan to Manage West Virginia's Overcrowding Prison Population without judicial intervention. Moreover, the Division asserts, inmates awaiting transfer receive the benefit of various rehabilitation programs, such as educational services and substance abuse counseling, while lodged in regional and county jails and, furthermore, are being denied neither "good time" credit against their sentences nor parole while so incarcerated. *See, W.Va.Code,* 28–5–27 [1984]. The Regional Jail and Correctional Facility Authority, while in general agreement with the Plan submitted by the Division, contends that jail programming is primarily designed for pre-trial detention and

---

**3.** In so holding, this Court, in *Dodrill,* acknowledged:

> We are aware that the Department of Corrections has made some attempts during the last year to alleviate the unconstitutional overcrowding at the State's penal facilities. The Department of Corrections, with the cooperation of the Governor, has made progress through the use of good time awards, early release programs, commutations, transfers to other facilities, outside work projects, work release centers, and parole. We applaud these

efforts, but would much prefer adequate facilities so that prisoners may serve the full sentence imposed upon them.

177 W.Va. at 457, 352 S.E.2d at 746.

**4.** Subsequently, in *State ex rel. Smith v. Skaff,* 189 W.Va. 73, 428 S.E.2d 54 (1993), this Court noted that the Division of Corrections "complied with our directive to develop a plan for the *temporary* housing of state prisoners." 189 W.Va. at 74, 428 S.E.2d at 55 (emphasis added).

for short-term misdemeanants and that, therefore, "[t]he backlog of state-convicted inmates housed in regional jails has created a significant strain on both jail staff and inmates."[5]

The record herein indicates that the petitioners have been awaiting transfer to Division facilities for periods between six months and two years from the date of sentencing. The record further indicates that there are currently in excess of 700 inmates who are similarly situated. In addition, according to the Division, the prison population in West Virginia is expanding at an annual rate of just over 9%. As we made clear in the order of December 8, 1997, pursuant to *State ex rel. Dodrill v. Scott* and *State ex rel. Smith v. Skaff*, the Division has a nondiscretionary duty to incarcerate those inmates, who are sentenced to the penitentiary, "in a state penal facility operated by the Division of Corrections." The Division may not shift that duty to the regional and county jails. It is disturbing that the Division continues to do so. Whether the fault should be attributed to the executive branch or legislative branch may be fairly debatable, but suffice it to say a high degree of irresponsibility has been demonstrated to the legal obligation of the state to house its prisoners as the legislature itself has mandated.

Even without the report of the Special Master, it is obvious to this Court that the Plan submitted by the Division of Corrections is inadequate to meet the transfer and overcrowding problems raised by the petitioners. Although both the Division and the Regional Jail and Correctional Facility Authority assert that the West Virginia Legislature has committed funds to increase bed availability at the Division's facilities, nothing in the attenuated Plan reveals that the Division has engaged in the kind of meaningful analysis necessary to best utilize those funds. Certainly, a consideration of the transfer and overcrowding problems involves more than the mathematical solution of increasing the number of beds available to prison inmates. In the meantime, such inmates lodged in regional and county jails may not, in fact, be receiving the programs to which they are entitled.[6]

Without doubt, the Division of Corrections is in need of adequate facilities "so that prisoners may serve the full sentence imposed upon them." *See*, n. 3, *supra*. In order to achieve such facilities, however, a full and complete long-range plan must be developed. Nevertheless, of immediate concern is the transfer of prison inmates who currently are unlawfully lodged in regional and county jails within the meaning of *State ex rel. Dodrill v. Scott* and *State ex rel. Smith v. Skaff*. As the report of the Special Commissioner observed:

Even given the existing overcrowding in both the corrections system and the jails, some steps can be taken to ameliorate the situation. I would agree that special attention (and priority) ought to be given to jail inmates for whom special programming has been ordered. Secondly, for those inmates without special programming requirements there should be a more equitable "first in-first out" system for admission to the state system. I further concur that inmates who "act out" in jail so that they can be transferred to the state

---

[5.] It is worth noting that on July 6, 1998, an inmate at the South Central Regional Jail died as a result of injuries he received in a fight with another inmate. In an article in the *Charleston Daily Mail* on July 6, 1998, jail administrators attributed the death, in part, to overcrowding.

[6.] In documents filed herein, both the Division of Corrections and the Regional Jail and Correctional Facility Authority suggest that not all inmates awaiting transfer receive the benefit of rehabilitation programs while lodged in regional and county jails. As stated in the response of the Division:

Inmate movement is arranged based on parole eligibility date. The purpose is to ensure that an inmate with an eligibility date in sight moves to the Mount Olive Correctional Complex as soon as possible so that he may be able to begin whatever educational or counseling classes which may not have been available to him in the regional jail.

Moreover, the Regional Jail and Correctional Facility Authority, in its response, stated that "[i]nmates who require special treatment or programming available only at Corrections facilities must have priority in transfer."

The record indicates that, while the completion of certain rehabilitation programs may be required of an inmate following his or her release upon parole, a prison inmate is more likely to receive the benefit of such programs *before release* if he or she is transferred from a regional or county jail to a Division facility.

system should not be rewarded by having that behavior rewarded accordingly.

■ Thus, we conclude that a one-page plan developed by the West Virginia Division of Corrections which consists of nothing more than proposals to increase bed availability at facilities of the Division over a period of years, and which contains no meaningful analysis of such matters as the problems of prison overcrowding and the lodging of prison inmates for extended periods of time in regional and county jails, fails to satisfy the directive of this Court that the Division of Corrections submit a plan, pursuant to this Court's decisions in *State ex rel. Dodrill v. Scott, supra,* and *State ex rel. Smith v. Skaff, supra,* concerning the Division's nondiscretionary duty to incarcerate those inmates, who are sentenced to the penitentiary, in a state penal facility operated by the Division of Corrections.[7]

■ Accordingly, this Court is of the opinion that relief in mandamus is warranted and that the petitioners, and others similarly situated, are entitled to prompt transfer to Division of Corrections facilities. Specifically, we direct the Commissioner of the Division of Corrections to submit to this Court within 60 days a full and complete plan for the *immediate* transfer to Division facilities of at least 50% of all inmates currently lodged in regional and county jails who are awaiting such transfer. In addition, we direct the Commis-

sioner of the Division of Corrections to submit to this Court, as soon as practicable, a full and complete long-range plan for the transfer of such inmates to Division of Corrections facilities. Both plans shall be reviewed by the Special Master who shall promptly submit separate reports, as to the adequacy of each plan, to this Court.

Writs granted as moulded.

McCUSKEY, Justice, concurring, in part, and dissenting, in part:

I agree with the majority position insofar as it directs compliance with the West Virginia law requiring Department of Corrections prisoners currently housed in county jails to be incarcerated in facilities of the Department of Corrections. However, I dissent from the part of the majority holding which interferes with the lawful discretion of the Department of Corrections to make incarceration decisions for specific inmates.

I am particularly concerned with the majority's statement that the duty of the Department of Corrections to incarcerate inmates in a state penal facility is simply being shifted to the regional and county jails. Clearly, prison overcrowding is a very real problem and one which is not easily solved. However, the Legislature has provided, under § 31–20–5(8) of the West Virginia Code, that the Regional Jail Authority may lease space and facilities in the regional jails to the

---

7. It should be noted that the Division of Corrections asserts that *W.Va.Code,* 31–20–5(8) [1994], provides authority for the Division "to utilize the regional jails to house prisoners." As *W.Va.Code,* 31–20–5(8) [1994], states, in creating a plan to establish regional jails, the Regional Jail and Correctional Facility Authority shall consider:

The leasing of any available portion of any regional jail space and the leasing of available facilities of any regional jail to the West Virginia department of corrections for the keeping and detaining of prisoners sentenced to serve terms of incarceration under the custody of the West Virginia department of corrections for nonviolent crimes and to contract with the department of corrections for the providing of food, clothing, shelter and any and all incidental costs in the care, control and maintenance of such prisoners: *Provided, That such leasing does not restrict space or facilities needed for the detention of county prisoners.*

(emphasis added)

Furthermore, the Division does not contend that any such contract actually exists with respect to these petitioners.

The provisions of *W.Va.Code,* 31–20–5(8) [1994], notwithstanding, the Regional Jail and Correctional Facility Authority has indicated to this Court, as noted above, that "[t]he backlog of state-convicted inmates housed in regional jails has created a significant strain on both jail staff and inmates." *See,* n. 5, *supra,* concerning the recent fatality in the South Central Regional Jail. Accordingly, the Division's suggestion that *W.Va. Code,* 31–20–5(8) [1994], precludes relief in this proceeding is without merit. As stated above with regard to another statute more central to our consideration herein, the language of *W.Va. Code,* 62–13–5 [1977], that department of corrections inmates "shall be committed to an appropriate institution," was described by this Court, in *Dodrill, supra,* as prohibiting the Division of Corrections "from lodging or forcing to be lodged in a county jail any person sentenced by a circuit court of this State to a state penal facility."

West Virginia Department of Corrections "for the keeping and detaining of prisoners sentenced to serve terms of incarceration under the custody of the West Virginia department of corrections for nonviolent crimes."

Since the Legislature has clearly provided the Department of Corrections with this option, and as the only restraint placed upon this alternative is that "such leasing not restrict space or facilities needed for the detention of county prisoners," I do not think that we should state, as we did in the order of December 8, 1997 pursuant to *State ex rel. Dodrill v. Scott* and *State ex rel. Smith v. Skaff,* that the duty of the Department of Corrections to incarcerate inmates who are sentenced to the penitentiary, "in a state penal facility operated by the Division of Corrections," is wholly nondiscretionary. Rather, it is nondiscretionary *except* as modified by the Legislature, which determines the extent of the authority of state agencies. For us to remove a grant of authority, which the Legislature has clearly provided to the Department of Corrections, is, in my opinion, micromanagement of that department and is unwarranted.

For the foregoing reasons, I concur in part and dissent in part.