542 S.E.2d 889

STATE of West Virginia ex rel. Daniel L. SAMS, Petitioner,

v.

Paul W. KIRBY, Commissioner, Division of Corrections, Steven D. Canterbury, Executive Director of the Regional Jail and Correctional Facility Authority, et al., Respondents.

State of West Virginia ex rel. Jason Spiker, Petitioner,

v.

Paul W. Kirby, Commissioner, Division of Corrections, Steven D. Canterbury, Executive Director of the Regional Jail and Correctional Facility Authority, et al., Respondents.

State of West Virginia ex rel. John G. Benger, Petitioner,

v.

Paul W. Kirby, Commissioner, Division of Corrections, Steven D. Canterbury, Executive Director of the Regional Jail and Correctional Facility Authority, et al., Respondents.

State of West Virginia ex rel. Earl Puffenburger, Petitioner,

v.

Paul W. Kirby, Commissioner, Division of Corrections, Steven D. Canterbury, Executive Director of the Regional Jail and Correctional Facility Authority, et al., Respondents.

State of West Virginia ex rel. Eric C. Robinson, Petitioner,

v.

Paul W. Kirby, Commissioner, Division of Corrections, Steven D. Canterbury, Executive Director of the Regional Jail and Correctional Facility Authority, et al., Respondents.

State of West Virginia ex rel. Coleen Roath, Appellant,

v.

Major General Otis Cox, Secretary of the Department of Public Safety, William K. Davis, Commissioner, Division of Corrections, and Shannon Markle, Administrator, Central Regional Jail, Appellees.

Nos. 26647, 26909, 26910, 27308, 27309 and 26911.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2000.

Decided Dec. 8, 2000.

George Castelle, Esq., Kanawha County Public Defender, Charleston, West Virginia, for all Petitioners.

Chad M. Cardinal, Esq., General Counsel, West Virginia Regional Jail and Correctional Facility, Charleston, West Virginia, Attorney for West Virginia Regional Jail and Correctional Facility.

W.T. Weber, Esquire, Weber & Weber, Weston, West Virginia, Attorney for Appellant Roath.

Darrell V. McGraw, Jr., Attorney General, Charles Houdyschell, Jr , Assistant Attorney General, Charleston, West Virginia, Attorneys for all Respondents.

PER CURIAM:

## I.

### BACKGROUND

Petitioners are all inmates who have been sentenced to what is commonly referred to as "prison," i.e., they have been sentenced to terms of confinement in facilities of the West Virginia Division of Corrections (the "DOC"). However, such sentences notwithstanding, the petitioners remain confined in jails, which are not operated by the DOC. The record and arguments of counsel demonstrate that over 850 prisoners who have been sentenced to DOC facilities remain elsewhere, with approximately 450 of those in regional jails, and the remainder in county jails.

Petitioners call our attention to the obvious difference between the jails and the facilities operated by the DOC, namely, that the DOC facilities were designed and constructed with the long-term incarceration of prisoners in mind, whereas the jails were designed and constructed to house prisoners for a shorter period of time. The petitioners desire prompt transfer to a DOC facility so that they might take advantage of the superior selection of recreational and rehabilitative programs offered by the DOC. Specifically,

they assert that their continued incarceration in regional and county jails is unlawful and has resulted in a denial of the rehabilitative programs to which they are entitled.

We issued a rule to show cause against the Commissioner of the Division of Corrections, directing him to demonstrate why relief in mandamus should not be awarded to the petitioners. Subsequently, this Court ordered that the Executive Director of the Regional Jail and Correctional Facility Authority be joined as a respondent, and directed that the Kanawha County Public Defender be appointed to represent the petitioners.

## II.

### STANDARD OF REVIEW

■ Petitioners request a writ of mandamus requiring their transfer to DOC facilities. As we held in our often-cited case of *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981):

> Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law.

Syl. pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981); *Accord, Parks v. Board of Review*, 188 W.Va. 447, 425 S.E.2d 123 (1992).

## III.

### DISCUSSION

■ While the specific petitioners in this suit may be new, there is little novel about this proceeding, as we have addressed this issue of the delayed transfer of prisoners from the jails in several cases. In *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981) this Court established that prisoners had a constitutional and statutory right to rehabilitation, as set forth in W. Va.Code § 62–13–1:

> It is evident from the provisions of W. Va.Code §§ 62–13–1 and 62–13–4 that the Legislature requires rehabilitation to be the primary goal of the West Virginia corrections system. It is also evident that the rehabilitative goal embodied in these statutes is designed to benefit the class of

which the petitioners are members.... Therefore, we hold that inmates incarcerated in West Virginia state prisons have a right to rehabilitation established by W. Va.Code §§ 62–13–1 and 62–13–4 and enforceable through the substantive due process mandate of article 3, section 10 of the West Virginia Constitution.

*Cooper v. Gwinn*, 171 W.Va. 245, 252–53, 298 S.E.2d 781, 788–89 (1981).

Later, in *State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 352 S.E.2d 741 (1986), this Court ruled that, under the Code, the State had a non-discretionary duty to house inmates sentenced to prison in DOC facilities. In that case, we based our decision upon two statutes, W. Va.Code §§ 25–1–15 and 62–13–5:

> The language of the statute is mandatory, and requires the Commissioner of the Department of Corrections to accept for confinement all persons sentenced by courts of this State to state penal facilities. The jails of various counties, however, are not institutions within the West Virginia Department of Corrections. Thus W. Va. Code 62–13–5 [1977] prohibits the Commissioner of the Department of Corrections from lodging or forcing to be lodged in a county jail any person sentenced by a circuit court of this State to a state penal facility...[o]ur statutory scheme thus not only contemplates, but mandates, a system in which convicts sentenced to the penitentiary are received by the Department of Corrections and incarcerated in a State penal facility.

*State ex rel. Dodrill v. Scott*, 177 W.Va. 452, 456, 352 S.E.2d 741, 745 (1986).

Again the DOC was unable to comply with our direction, and continued to house many of its inmates in the jails. Then in *State ex rel. Smith v. Skaff*, 187 W.Va. 651, 420 S.E.2d 922 (1992), the Court found that jails, because they are controlled and operated by county governments or by the Regional Jail authority, are not "appropriate facilities provided by the state," and that W. Va.Code § 25–1–15 placed a mandatory duty on the state to take each prisoner to Huttonsville upon sentencing, to be diagnosed and classified to determine his correct placement within the prison system:

The statutory scheme of this state places a nondiscretionary duty upon the Division of Corrections to incarcerate those inmates who are sentenced to the penitentiary in a state penal facility operated by the Division of Corrections. Hence, the Division of Corrections is prohibited from lodging inmates in a county or regional jail facility absent the availability of space in these facilities once the inmates have been sentenced to a Division of Corrections facility.

Syl. pt. 1, *State ex rel. Smith v. Skaff,* 187 W.Va. 651, 420 S.E.2d 922 (1992). We went on to state:

We have recognized the problem with overcrowding in state penal facilities. The *Dodrill* decision specifically mandated that it is the duty of the executive and legislative branches of government to resolve the unconstitutional overcrowding problems, and in *Crain v. Bordenkircher,* 180 W.Va. 246, 376 S.E.2d 140 (1988), we ordered the Division of Corrections to build a new prison by July 1, 1992. The failure to comply with this order has a convoluted history, most recently culminating in the granting of an extension of time to July 1, 1994, for the building of the new prison. *See Crain v. Bordenkircher,* 187 W.Va. 596, 420 S.E.2d 732 (1992) (Extending the original closing date of the WVP to July 1, 1994); *see also Dodrill,* 177 W.Va. at 456–57, 352 S.E.2d at 745. It is tragic that, despite the fact that ample time has been provided for this obligation to have been met, it has not been. Moreover, it is extremely unfair for the Division of Corrections to shuffle this problem onto the county and regional jails. Not only are these facilities in no better position to cope with this problem in view of their own fiscal limitations with all the overcrowding and understaffing problems attendant thereto, but it simply is not their responsibility under the law.

It is certainly not this Court's desire to effectively unleash upon the innocent public convicted criminals who have not completed their minimum sentences. On the other hand, the problem of overcrowding must be remedied and it would be profoundly unfair not only to the county and regional jails, but also to the inmates living in grossly inadequate and overcrowded jail facilities, to place the resolution of the problem on the back burner until the completion of the new prison. Thus, out of an abundance of fairness and forbearance, we direct the Division of Corrections to develop a plan within the next six months to provide some temporary arrangement to meet its obligation to house and detain all those lawfully sentenced to a state penal facility until such time as the new prison is completed. At the conclusion of this period, the failure of the Division of Corrections to live up to its legal responsibility will no longer be tolerated.

*Id.,* 187 W.Va. at 655, 420 S.E.2d at 926 (footnote omitted). Our strong conclusion rings somewhat hollow now, as similar problems persist. Finally, and most recently, in *State ex rel. Stull v. Davis,* 203 W.Va. 405, 508 S.E.2d 122 (1998) (*per curiam*), this Court ordered the Division of Corrections to submit plans and start transferring prisoners out of the jails:

Specifically, we direct the Commissioner of the Division of Corrections to submit to this Court within 60 days a full and complete plan for the *immediate* transfer to Division facilities of at least 50% of all inmates currently lodged in regional and county jails who are awaiting such transfer. In addition, we direct the Commissioner of the Division of Corrections to submit to this Court, as soon as practicable, a full and complete long-range plan for the transfer of such inmates to Division of Corrections facilities. Both plans shall be reviewed by the Special Master who shall promptly submit separate reports, as to the adequacy of each plan, to this Court.

*State ex rel. Stull v. Davis,* 203 W.Va. 405, 412, 508 S.E.2d 122, 129 (1998).

Several aspects of these prior holdings were countered by the Legislature when it enacted Senate Bill 98 in the 2000 legislative session. This bill repealed W. Va.Code § 62–13–1 and changed the focus of a related section, W. Va.Code § 25–1–1, *et seq.*

(a) The primary purpose of the division of corrections is to enhance public safety by providing for the incarceration and care of convicted offenders who have been sentenced by courts of proper jurisdiction to

serve terms of incarceration. It is the intent of the Legislature:

(1) That persons committed to correctional institutions of the state for whom release is available for crimes be afforded appropriate treatment to reestablish their ability to live peaceably, consistent with the protection of the community;

(2) That persons committed to correctional institutions of the state be released at the earliest possible date, consistent with public safety;

(3) To establish a just, humane and efficient corrections program; and

(4) To avoid duplication and waste of effort and money on the part of public and private agencies.

(b) This section shall be construed in favor of public safety.

W. Va.Code § 25–1–1a (2000). Additionally, the Legislature has amended W. Va.Code § 62–13–5, so that now the DOC has the authority to "lease" beds from the jails for prisoners:

All adult persons sentenced by a court to serve a sentence of incarceration in a penitentiary, prison or a correctional institution under the jurisdiction of the commissioner of corrections shall be deemed to be sentenced to the custody of the commissioner of the division of corrections. The commissioner, or his or her designee, has the authority to and may order the transfer of any such adult to any appropriate institution within the division of corrections or within the department of military affairs and public safety. The commissioner has full discretionary authority to contract with any county jail, regional jail or other appropriate facility or institution for the incarceration and care of adult inmates.

The commissioner, or his or her designee, may transfer any adult prisoner or inmate who is mentally disturbed and who would more appropriately be treated in an institution under the jurisdiction of the division of health, to the division, subject to the approval of the director of health; and may transfer any adult prisoner or inmate to an appropriate mental facility for specialized medical treatment.

W. Va.Code § 62–13–5 (2000). Also, the Legislature has repealed W. Va.Code § 28–5A–7 and altered the DOC's mandate to diagnose and classify prisoners, now found in W. Va.Code § 25–1–15:

The commissioner of corrections may establish diagnostic and classification divisions.

Notwithstanding any provision of the code to the contrary, all persons committed to the custody of the commissioner of the division of corrections for presentence diagnosis and classification and all persons sentenced to the custody of the division of corrections shall, upon transfer to the division of corrections, undergo diagnosis and classification.

W. Va.Code § 25–1–15 (2000).

Our history of judicial review and legislative response notwithstanding, we are still faced with DOC inmates confined to jails that were not designed for incarcerating a prisoner for an extended time. No amount of statutory alteration can change the fact that our inmates sentenced to prison should be incarcerated in prison facilities designed and built for that purpose. It is because the DOC has so far been unable to comply fully with the directives of this Court in *Cooper, Dodrill, Smith,* and now *Stull,* that we yet again address this matter.

We are mindful of the difficult position faced by the DOC. Charged with the safe housing of the state's prisoners, the DOC has no related authority to levy taxes or otherwise raise money to fund its operations. Bound by various state and federal regulations, the DOC must provide a certain amount of space and equipment for each prisoner. We recognize that the DOC has an upper limit to the number of prisoners it may legally house at any given time, and we would not wish to send any prisoner into a facility where his or her safety, or that of the public at large, is compromised by overcrowding.

However, at the same time, we cannot ignore the DOC's responsibility to house the prisoners who are sentenced to its facilities. Nor can we ignore the reality that the jails were simply not designed for long term incarceration, and that leaving prisoners in the jails for long periods of time is good for neither prisoners, nor public.

## IV.

### CONCLUSION

Accordingly, we grant petitioners' request and order as follows: We hereby discharge Patrick McMannis from his post as Special Master. We appoint Forrest H. Roles as our new Special Master. We reiterate our holding in *Stull,* and order the Commissioner of the Division of Corrections and the Director of the Regional Jail Authority to work with the new Special Master to create a complete, long-range plan for the transfer to DOC facilities those inmates lodged in regional and county jails who are awaiting such transfer. The Special Master shall submit his report to this Court as soon as practicable and the Commissioner and the Director shall make available to the Special Master such funds and resources as are necessary to complete this task. Other petitions for writs of mandamus filed by similarly situated prisoners shall be held in abeyance until we have reviewed the Special Master's report.

Writs granted as moulded.